**STATE of Indiana and IOSHA Inspector, Appellants (Plaintiffs Below),**

v.

**KOKOMO TUBE COMPANY, Appellee (Defendant Below).**

**No. 2–780A234.**

Court of Appeals of Indiana, Second District.

Oct. 27, 1981.

Theodore L. Sendak, Atty. Gen., James F. Schmidt, Deputy Atty. Gen., Indianapolis, for appellants.

Charles H. Criss, Fern & Criss, Peru, Donald W. Savelson, Frank T. Mamat, Proskauer, Rose, Goetz & Mendelsohn, Washington, D. C., for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiffs-appellants State of Indiana and IOSHA Inspector (the State) appeal from the trial court's denial of their request for a warrant to inspect the workplace of defendant-appellee Kokomo Tube Company (the Company) pursuant to § 23.1[1] of the Indiana Occupational Safety and Health Act (IOSHA or Act), which gives IOSHA inspectors the authority to investigate business premises for violations of occupational safety and health standards, the State claiming that the trial court erred in concluding that issuance of a warrant to inspect under the statute depends upon a showing of probable cause to believe that a specific violation of IOSHA exists on the premises.

We reverse.

## FACTS

The record discloses that on November 13, 1979, IOSHA Inspector Francis Venters

---

1. Ind.Code § 22–8–1.1–23.1 provides as follows:

The commissioner and his designated representatives, on their own motion, or on receipt of a written and signed request for an inspection from an employee or his representative setting forth with reasonable particularity the grounds for inspection, may enter without de-

(Venters) entered the Company's plant in Peru for the purpose of inspecting the working area of the business. The Company refused to permit the inspection because Venters did not have a warrant.

On December 17, 1979, the State applied to the Miami Circuit Court for a warrant. In support of its application the State presented the affidavits of Inspector Venters and James J. Denbo (Denbo), IOSHA Director of Building and Factory Inspection. Pertinent paragraphs of the Venters affidavit are as follows:

1. That affiant's superiors assigned him to conduct a general scheduled Target Industries Program inspection of the above premises.

2. That said inspection was attempted by this affiant at the above premises on November 13, 1979, and the affiant was refused entry thereto.

Based on the above information, affiant is requesting this search warrant for Kokomo Tube Company, located at Blair Pike Road, Peru, Miami County, Indiana. Affiant requests that this search warrant include all rooms, areas or sections of the building and premises used by company employees.

*Record* at 7.

Relevant paragraphs of the Denbo affidavit provide:

1. That IOSHA inspector Francis Venters was assigned by IOSHA to conduct an inspection of the above premises pursuant to the provisions of the Indiana Occupational Safety and Health Act.

2. That said inspection is a regularly scheduled general inspection by IOSHA pursuant to IC 22–8–1.1–23.1, undertaken because of high hazards present in the manufacture of steel pipe and tubes as determined by statistical surveys of inspections and accident reports by the De-

lay and inspect at all reasonable times places of employment in order to enforce any provisions of this chapter, including occupational safety and health standards. *Persons making inspections shall present appropriate credentials to the owner, operator or agent in charge of the place of inspection.*

partment of Statistics, Indiana Division of Labor, and the Bureau of Labor Statistics, United States Department of Labor, which have caused it to be placed on the Target Industries Program List.

*Record* at 8.

The trial court, rather than issuing a warrant at that time, set the matter for hearing.

At the hearing on January 23, 1980, Denbo described in detail the program under which the Company, which manufactures steel pipe and tubes, was selected for inspection. The State provides us with a succinct summary of Denbo's testimony in its amended reply brief:

> The Target Industries Program is a method used by IOSHA in determining places of employment to be chosen for inspection pursuant to the agency's right to initiate inspections as found in IC 22–8–1.1–23.1. . . . [S]ome 170 Standard Industrial Classifications (industries) are included within the Program including Standard Industrial Classification Number 3317 which consists of establishments such as Kokomo Tube which are engaged in the manufacture of steel pipe and tubes. These 170 industries are only a portion of the total number of Standard Industrial Classifications which include all different types of employment and have been selected because they have been statistically determined to have high hazards in that they have more than three lost workday injury cases per one hundred employees per year. Ninety-five (95%) percent of IOSHA's general scheduled inspections are made in these high hazard industries. The selection of individual employers within the program is conducted first by excluding all employers that had been inspected in the previous year. The agency then proceeds through the 170 industries in rounds selecting one employer in each industry in each round. The individual establishment chosen for inspection in a particular industry in a particular round is selected based on the size of the employers within the given industry and is done in descending order of size.

*Amended reply brief* at 12–13.

The trial court again refused to issue a warrant because the affidavits and evidence presented failed to establish probable cause to believe that a specific violation of IOSHA existed on the Company's premises, and so the State appeals.

## ISSUES

Two issues are presented for review:

1. What standard of probable cause governs the issuance of a warrant to conduct a nonconsensual inspection of business premises pursuant to Ind. Code § 22–8–1.1–23.1? (hereinafter referred to as the Inspection Statute)

2. Were the affidavits and evidence introduced before the trial court adequate to meet the applicable probable cause standard?

## DECISION

*ISSUE ONE*—What standard of probable cause governs the issuance of a warrant to conduct a nonconsensual inspection of business premises pursuant to the Inspection Statute?

*PARTIES' CONTENTIONS*—The State urges us to adopt the standard announced by the United States Supreme Court in *Marshall v. Barlow's, Inc.*, (1978) 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305. Although the Court concluded that nonconsensual warrantless searches of business premises under § 657(a)[2] of the Occupational

---

2. 29 U.S.C. § 657(a) authorizes agents of the Secretary of Labor to inspect business premises for OSHA violations:

(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reason-

Safety and Health Act (OSHA) were unconstitutional, it rejected the argument that the sole standard for issuing warrants under OSHA should be probable cause "in the criminal law sense," saying probable cause could be established either by producing evidence of a violation (criminal standard) *or* by showing compliance with "reasonable legislative or administrative standards" for inspecting the premises in question. 436 U.S. at 320, 98 S.Ct. at 1824. The State emphasizes the importance of following a mandate from the United States Supreme Court in the fourth amendment area. In addition, the State stresses similarities between penalty provisions under OSHA and IOSHA, arguing that because both statutes impose largely civil sanctions for violations of safety standards, a "noncriminal" standard of probable cause should govern the issuance of warrants to detect such violations.

The Company concedes that the relaxed probable cause standard set forth in *Barlow's* is proper under a statutory scheme, such as OSHA, which provides for enforcement of safety regulations almost entirely by civil means, but maintains that IOSHA imposes a broad range of criminal sanctions for violations of its safety standards. Thus, criminal probable cause should be the sole standard governing issuance of a warrant to determine compliance with IOSHA's safety regulations.

*CONCLUSION*—Probable cause to conduct a nonconsensual inspection of business premises pursuant to the Inspection Statute can be established by presenting specific evidence of an existing violation *or* by showing compliance with "reasonable legislative or administrative standards" for inspecting the premises in question.

Our task is to determine the standard of probable cause governing issuance of a warrant to conduct a nonconsensual inspection of business premises under the Inspection Statute—a matter of first impression in Indiana. That statute provides:

The commissioner and his designated representatives, on their own motion, or on receipt of a written and signed request for an inspection from an employee or his representative setting forth with reasonable particularity the grounds for inspection, *may enter without delay and inspect at all reasonable times places of employment in order to enforce any provisions of this chapter,* including occupational safety and health standards. Persons making inspections shall present appropriate credentials to the owner, operator or agent in charge of the place of inspection. Ind.Code § 22–8–1.1–23.1 (emphasis supplied).

The U.S. Supreme Court, in *Marshall v. Barlow's, Inc., supra,* endorsed a relaxed standard for issuance of such a warrant under § 657(a) of OSHA, the federal counterpart of the Inspection Statute, which provides that:

(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

29 U.S.C. § 657(a) (hereinafter referred to as the Federal Inspection Statute).

Uniformity between federal and state court decisions in the fourth amendment area is a worthy objective. And we recog-

able manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and

materials therein, and to question privately any such employer, owner, operator, agent or employee.

nize, as did the Court in *Barlow's,* that our decision must strike a balance between significant competing interests: The public interest in enforcing health and safety standards in the workplace and the private interest in being free from unreasonable government interference.

A closer look at *Barlow's* indicates that the Supreme Court, in examining the Federal Inspection Statute, found that it, like the Indiana Inspection Statute, does not expressly require a warrant to inspect business premises. This, said the Court, violates the fourth amendment prohibition against unreasonable searches and seizures. The Court required that a government inspector obtain a warrant to conduct a nonconsensual search pursuant to the statute. But, continued the Court, probable cause to secure a warrant could be established on *either* of two bases:

Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his *entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]."* Camara v. Municipal Court, 387 U.S. [523], at 538, 87 S.Ct. [1727] at 1736 [18 L.Ed.2d 930 (1967)]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.

436 U.S. at 320–21, 98 S.Ct. at 1824–25 (emphasis supplied).

As the quoted language suggests, the Court based its decision in *Barlow's* upon the companion cases of *Camara v. Municipal Court,* (1967) 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, and *See v. City of Seattle,* (1967) 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943. The Court in *Camara* applied the principle that "except in certain carefully defined classes of cases,[3] a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.,* 387 U.S. at 523–24, 87 S.Ct. at 1728. So an official must secure a warrant in order to conduct a nonconsensual inspection of a private home for housing code violations. In *See,* the Court applied *Camara's* protection against warrantless searches of personal residences to commercial structures. But the Court in *Camara* and *See* stopped short of requiring that warrants be based upon "probable cause to believe that a particular [residential or commercial structure] contains violations of . . . the code being enforced." *Id.* at 534, 87 S.Ct. at 1734. Instead the Court, recognizing the substantial governmental interest in "prevent[ing] even the unintentional development of conditions which are hazardous to public health and safety[,]" *id.* at 535, 87 S.Ct. at 1734, announced the relaxed probable cause standard which it endorsed in *Barlow's.*

**3.** The Supreme Court has recognized an exception to the warrant requirement for businesses with a long history of supervision and inspection. *United States v. Biswell,* (1972) 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (firearms industry); *Colonnade Catering Corp. v. United States,* (1970) 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (liquor industry). The State correctly points out that the Indiana Supreme Court has applied the *Colonnade-Biswell* doctrine, permitting warrantless inspections in *State v. Tindell,* (1980) Ind., 399 N.E.2d 746 (motor vehicle industry) and *City of Indianapolis v. Wright,* (1978) Ind., 371 N.E.2d 1298 (massage parlor business). Because our supreme court has followed the lead of the U. S. Supreme Court in *Colonnade* and *Biswell,* the State argues, this court should follow the lead of the U. S. Supreme Court in *Barlow's* with respect to the standard for issuance of an IOSHA inspection warrant.

The Company rightfully maintains that in order to decide whether to follow the *Barlow's* standard, we must focus upon the nature of the penalties imposed for violating workplace standards under IOSHA. So our inquiry becomes: Does IOSHA, like OSHA, enforce safety standards primarily by *civil* means, thereby justifying a reduced level of probable cause for issuance of an inspection warrant?

The penalty scheme prescribed by Congress under OSHA (29 U.S.C. § 666) encompasses a variety of civil money sanctions[4] for safety standard violations, the severity of the sanction depending upon the nature of the infraction. Thus, if an employer "wilfully or repeatedly" violates a safety standard, he may be assessed a maximum civil penalty of $10,000. *Id.* § 666(a). If he commits a "serious" violation, he must be assessed a civil penalty of up to $1,000. *Id.* § 666(b). If a violation is neither wilful, repeated, or serious, a civil penalty of $1,000 may be imposed. *Id.* § 666(c).

OSHA's penalty statute also contains criminal sanctions. Only one applies to violations of safety standards: If an employer wilfully violates a safety standard and that violation results in the death of an employee, the employer is subject to a $10,000 fine or six months in prison or both. *Id.* § 666(e).

Other criminal penalties, not applicable to safety standard violations, are also prescribed: Anyone giving unauthorized advance notice of an inspection is subject to a $1,000 fine or six months imprisonment or both, *id.* § 666(f); and anyone making a false representation or statement is subject to a $10,000 fine or six months imprisonment or both, *id.* § 666(g).

IOSHA's penalty provisions, unlike OSHA's, are not confined to a single section. Section 49 provides a basic criminal sanction: "A person who knowingly violates this chapter commits a class B misdemeanor, *except as otherwise provided.*" (emphasis supplied) (hereinafter referred to as the Criminal Penalty Statute) The Indiana Criminal Code's sentencing article specifies that a class B misdemeanor carries a maximum $1,000 fine or six months imprisonment or both. Ind.Code § 35-50-3-3.

The basic sanction of the Criminal Penalty Statute applies to violations of substantive provisions of IOSHA such as § 37.1, which simply says that "[n]o person may make a false statement, representation, or certification in any ... document required pursuant to this chapter." And as the "otherwise provided" language of the Criminal Penalty Statute suggests, other substantive provisions of the Act carry their own sanctions. For example, § 24.2 provides that one who recklessly gives unauthorized advance notice of an inspection commits a class B misdemeanor. There are substantial similarities between these sections of IOSHA and § 666(f) and (g) of OSHA. More significant is the fact that IOSHA's only criminal sanction *for safety standard violations*, § 36.1, was repealed in 1978.[5] The provision was almost identical to § 666(e) of OSHA, subjecting an employer whose wilful safety standard violation results in an employee fatality to a $10,000 fine or six months imprisonment or both.

IOSHA's *civil* penalties are consolidated in § 27.1(a):

(a) The commissioner may assess the following civil penalties:

(1) Any employer who has received a safety order for violation of any standard, rule, or order not of a serious nature may be assessed a civil penalty of up to one thousand dollars ($1,000) for each such violation.

(2) Any employer who has received a safety order for a serious violation of

---

**4.** Although the Supreme Court has not expressly decided the question, federal appellate decisions uniformly conclude that OSHA's "civil" sanctions are civil in fact as well as in name. *E. g., Mohawk Excavating, Inc. v. OSHRC,* (2d Cir. 1977) 549 F.2d 859; *Clarkson Constr. Co. v. OSHRC,* (10th Cir. 1976) 531 F.2d 451; *Bren-*

*nan v. Winters Battery Mfg. Co.,* (6th Cir. 1975) 531 F.2d 317, *cert. denied, Winters Battery Mfg. Co. v. Usery* (1976), 425 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815.

**5.** Repealed by Acts 1978, P.L. 2, § 2251, effective July 1, 1978.

any standard, rule, or order of this chapter may be assessed a civil penalty of up to one thousand dollars ($1,000) for each violation.

(3) Any employer who fails to correct a violation for which a safety order has been issued within the period permitted may be assessed a civil penalty of up to one thousand dollars ($1,000) for each day during which the failure or violation continues.

(4) Any employer who knowingly or repeatedly violates any standard, rule, or order of this chapter may be assessed a civil penalty of up to ten thousand dollars ($10,000).

(hereinafter referred to as the Civil Penalty Statute)

The parties disagree as to which penalty statute—criminal or civil—applies to violations of safety standards. To support its argument that the Criminal Penalty Statute provides the sanction for violating safety standards under IOSHA, the Company refers to the 1978 amendments to that statute. The prior version specified that one who "wilfully" violated any provision of the Act for which no other penalty was provided was "guilty of a misdemeanor" and hence subject to a $500 fine or six months in prison or both. The Company points to the change in the requisite degree of culpability from the allegedly narrow "wilfully" to the broader "knowingly," coupled with the increase in the potential monetary penalty from $500 to $1000, as evincing a legislative intent to "imbue the entire Act with an overriding criminal nature." *Amended appellee's brief* at 8. Thus, the Company urges us to construe the sanctions prescribed by the Civil Penalty Statute as merely adjunctive.

■ To resolve the statutory question thus raised requires us to embrace certain maxims of ·statutory construction in order to ascertain and give effect to the intent of the legislature. *Walton v. State*, (1980) Ind., 398 N.E.2d 667; *Loza v. State*, (1975) 263 Ind. 124, 325 N.E.2d 173. Determination of legislative intent means an examination of the entire statute, prior versions,

changes made, and the reasons for making them. *Coghill v. Badger*, (1981) Ind.App., 418 N.E.2d 1201; *Bowman v. State*, (1979) Ind.App., 398 N.E.2d 1306; *Livingston v. Consolidated City of Indianapolis*, (1979) Ind.App., 398 N.E.2d 1302. We must also consider the goals sought to be attained by the legislation in question. *Wedmore v. State*, (1954) 233 Ind. 545, 122 N.E.2d 1; *Wilfong v. Indiana Gas Co., Inc.*, (1980) Ind.App., 399 N.E.2d 788. We are bound to construe legislation "in such a way as to oppose prejudice to public interest." *State ex rel. Bynum v. LaPorte Superior Court*, (1973) 259 Ind. 647, 650, 291 N.E.2d 355, 356. *See also Walton, supra; Loza, supra.* Statutes relating to the same subject matter must be construed together. *Schrenker v. Clifford*, (1979) Ind., 387 N.E.2d 59; *State ex rel. State Board of Tax Commissioners v. Daviess Circuit Court*, (1967) 249 Ind. 580, 230 N.E.2d 761; *Coghill, supra.* Whenever possible, such statutes should be interpreted as harmonious, so as to give effect to each. *State ex rel. Indiana State Board of Finance v. Marion County Superior Court*, (1979) Ind., 396 N.E.2d 340; *Coghill, supra.* And finally, social legislation is to be liberally construed in favor of those intended to benefit from it. *Fogle v. Pullman Standard Car Manufacturing Co.*, (1961) 133 Ind.App. 95, 173 N.E.2d 668.

■ Applying these principles, we must agree with the State that the legislature, by amending the Criminal Penalty Statute, did no more than cause that section to conform to the revised criminal code as to requisite degrees of culpability and penalties for offenses. Moreover, we must conclude that the *Civil* Penalty Statute—by virtue of the "otherwise provided" language of the Criminal Penalty Statute—prescribes the penalties for employer violations of safety standards under IOSHA.

In 1976, the Indiana General Assembly enacted a new criminal code. Professor Kerr has discussed the revised code's general provision dealing with degrees of culpability for offenses:

> *One of the most confusing aspects of Indiana's criminal statutes has been the*

use of terms such as "intentionally," "knowingly," "*wilfully*," and "recklessly" *to denote the requisite degree or degrees of culpability for offenses. The drafters of the new code attempted to overcome this confusion by using only the terms* "intentionally," "knowingly," and "recklessly" *to specify degrees of culpability* . . . .

Kerr, *Foreword, 1976 Survey of Recent Developments in Indiana Law*, 10 Ind.L.Rev. 1, 2–3 (1976) (emphasis supplied).

The legislature also changed the code's sentencing provisions. Although prior law prescribed indeterminate sentences for most offenses, including misdemeanors, the revised code provides fixed penalties. Thus, a person who commits a class B misdemeanor "shall be imprisoned for a fixed term of not more than one hundred eighty (180) days; in addition, he may be fined not more than *one thousand dollars* ($1,000)." Ind.Code § 35–50–3–3 (emphasis supplied).

Thus, the 1978 amendments to the Criminal Penalty Statute simply brought it into line with sections of the revised criminal code. Indeed, Public Law 2, the source of the 1978 amendments to IOSHA, contained similar amendments to other statutes. *E. g.*, Ind.Code § 23–1–10–1, –3, –5 (penalties imposed under the General Corporation Act); *Id.* § 23–14–1–28 (penalties under the General Cemetery Act). Finally, the fact that Public Law 2 *repealed* IOSHA's only expressly criminal penalty *for safety standard violations* further undermines the State's argument that the 1978 amendments were designed to amplify the "criminal nature" of the Act.

The penalties enumerated under the Civil Penalty Statute, in contrast to the sanctions of the Criminal Penalty Statute, are *specifically directed* toward employer violations of safety standards. In fact, the Civil Penalty Statute contains sanctions similar to those prescribed by Congress under OSHA. Therefore, the sanctions of the Civil Penalty Statute apply to employer violations of safety standards under IOSHA by virtue of the "otherwise provided" language of the Criminal Penalty Statute.

From our determination that the relevant sanctions under IOSHA—like those under OSHA—are civil in character, it follows that the standard of probable cause for securing a warrant under IOSHA is the same as the standard established in *Barlow's* for obtaining a warrant under OSHA.

In candor we should add that California, the only other jurisdiction to have resolved the probable cause issue based upon the nature of the penal provisions under its state OSHA, reached a conclusion contrary to ours. *Salwasser Manufacturing Co., Inc. v. Municipal Court*, (1979) 94 Cal.App.3d 223, 156 Cal.Rptr. 292. California's OSHA penalty scheme, however, expressly provides criminal sanctions for safety standard violations, thus justifying the court's insistence upon a criminal probable cause standard. Other jurisdictions considering the issue, without exception, have followed the *Barlow's* standard. *E. g., Fred W. Allnutt, Inc. v. Commissioner of Labor and Industry*, (1980) 289 Md. 35, 421 A.2d 1360; *Keeler Brass Co. v. Michigan Department of Labor*, (1979) 93 Mich.App. 599, 286 N.W.2d 874; *State v. Wasatch Metal and Salvage Co.*, (1979) Utah 2d, 594 P.2d 894.

Our conclusion is in keeping with the rule of statutory construction that a specific statutory provision (the Civil Penalty Statute) takes priority over a non-specific provision (the Criminal Penalty Statute): The civil penalties found in the former expressly apply to employer violations of safety standards. Our conclusion also takes into account the fundamental purpose of IOSHA, which is to protect employees from workplace conditions which endanger their health and safety, see Ind.Code § 22–8–1.1–2; and balances the competing private and public interests at stake. The employer's privacy interest is safeguarded by the imposition of a warrant requirement. An employer who does not elect to consent to a warrantless inspection is "provide[d] assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neu-

tral criteria." *Barlow's, supra,* 436 U.S. at 323, 98 S.Ct. at 1826. And the employee's interest in being shielded from workplace hazards—both known and unknown—is accommodated by permitting the essential warrant to be issued "not only on specific evidence of an existing violation but also on a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to the particular [business]." *Id.* at 320, 98 S.Ct. at 1824.

Because the trial court erroneously applied a criminal probable cause standard to assess the sufficiency of the State's warrant application, we must reverse the judgment.

*ISSUE TWO*—Were the affidavits and evidence introduced before the trial court adequate to meet the applicable probable cause standard?

*PARTIES' CONTENTIONS*—Our conclusion that reversal is required leaves open an issue raised by the Company: As alternate grounds for upholding the trial court's judgment, the Company urges that the State supplied insufficient facts upon which to base a probable cause determination even under the *Barlow's* standard. The State responds that the affidavits and evidence before the trial court were sufficient to establish probable cause.

■ Before reaching the merits of this issue, we should examine Ind. Rules of Procedure, Trial Rule 59(F)(2),[6] the mechanism utilized by the Company to present it on appeal. No Indiana court has yet interpreted the rule, which was adopted in 1980. It provides as follows:

> If a motion to correct error is denied, *the party who prevailed* on that motion *may, in his appellate brief* and without having filed a statement in opposition to the motion to correct error in the trial court, *first assert grounds entitling him to relief in the event the appellate court concludes that the trial court erred in denying the motion to correct error.* If the appellate court reverses the judgment of the trial court, nothing in these Rules

or the Appellate Rules precludes the appellate court from determining that the appellee is entitled to any alternative relief which the appellee has requested. (emphasis supplied)

The Advisory Committee Notes reinforce the rule's clear language, saying that an appellee who believes his judgment may be upset on appeal may assert alternate grounds for relief for the first time on brief in the appellate court, that is, without having filed a motion to correct error or statement in opposition to his opponent's motion to correct error in the trial court. That is the situation here. Neither the State's motion to correct error nor appellant's brief asks us to decide whether the warrant application *met* the *Barlow's* standard of probable cause; we are simply asked to decide that *Barlow's provides* the standard. But the Company's appellee's brief goes a step further, urging us to affirm on the grounds that even if *Barlow's* does furnish the standard, the information found in the State's application was inadequate.

Thus, the question whether the State's application assures compliance "with reasonable legislative or administrative standards" for inspecting the Company's working area has been properly raised. Still to be determined, however, is the proper form of appellate relief. Are we to decide the question ourselves or reverse and order the trial court to resolve it on remand?

Ind. Rules of Procedure, Appellate Rule 15(N) indicates that it may be preferable for a reviewing court to direct that final judgment be entered in some circumstances rather than grant a new trial. In pertinent part it says:

> (N) Order or Relief Granted on Appeal. An order or judgment upon appeal may be reversed as to some or all of the parties and in whole or in part. The court, with respect to all or some of the parties or upon all or some of the issues, may order:
> (1) A new trial;
> (2) Entry of final judgment;

---

6. Now T.R. 59(G).

. . . .

> The court shall direct final judgment to be entered or shall order the error corrected without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair.

(emphasis supplied).

Bagni, Giddings, and Stroud offer some guidance for construing the terms "impracticable," "unfair," and "otherwise improper," explaining that a court on appeal will make a final determination with respect to a pure question of law or a mixed question of law and fact not involving disputed material facts. 4A B. Bagni, L. Giddings, & K. Stroud, Indiana Practice § 130 (1979). Only when material facts are in dispute will the reviewing court reverse and order the trial court to resolve the question. *Id.*

This court has phrased the test somewhat differently:

> It has long been established that the reviewing court will not substitute its opinion for that of the trial court on matters of evidence unless it is all one way and but one conclusion could be reached from the facts proved and that conclusion is adverse to the decision of the trial court.

*Combs v. City of New Albany,* (1966) 139 Ind.App. 641, 644, 218 N.E.2d 349, 351. *See also Department of Treasury v. Dietzen's Estate,* (1939) 215 Ind. 528, 21 N.E.2d 137; *Goldberg v. Britton,* (1949) 119 Ind.App. 90, 84 N.E.2d 201; *Ogle v. Barker,* (1945) 116 Ind.App. 250, 63 N.E.2d 426.

■ In this case, the material evidence concerning the nature of the program under which the Company was chosen for inspection is undisputed. 4A Indiana Practice, *supra.* Moreover, that evidence "is all one way and but one conclusion could be reached from the facts proved and that

conclusion is adverse to the decision of the trial court." *Combs, supra.* Thus, we are faced with a question capable of appellate resolution. So we cheerfully proceed to do so.

*CONCLUSION*—The affidavits and evidence presented to the trial court were adequate to meet the *Barlow's* standard of probable cause. Therefore, the trial court erred in refusing to issue the requested warrant.

According to the *Barlow's* Court, a warrant applicant may fulfill the crucial requirement of demonstrating a "reasonable legislative or administrative standard" for inspecting a particular establishment by describing a program based upon "specific neutral criteria." 436 U.S. at 323, 98 S.Ct. at 1826. The program could be

> derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area . . . .

*Id.* at 322, 98 S.Ct. at 1825.

Thus, the warrant application in *Barlow's,* which simply represented that "the desired inspection and investigation are contemplated as part of an inspection program designed to assure compliance with the Act and are authorized by Section 8(a) of the Act" was deficient because "[t]he program was not described, . . . or any facts presented that would indicate why an inspection of Barlow's establishment was within the program." *Id.* at 323, n. 20, 98 S.Ct. at 1826, n. 20.

A number of federal appellate decisions since *Barlow's,* including several from the Seventh Circuit, have addressed the question whether an OSHA warrant application contained sufficient data to assure compliance with the *Barlow's* standard. *In re Establishment Inspection of Gilbert & Bennett Manufacturing Co.,* (7th Cir. 1979) 589 F.2d 1335 [hereinafter cited as *Chromalloy*]; [7] *In re Establishment Inspection of*

---

7. *Gilbert & Bennett* was consolidated with another Seventh Circuit case, *Marshall v. Chromalloy American Corp.*; a single opinion was published. Because the *Chromalloy* decision is pertinent to the case at bar, we shall refer to the consolidated opinion as *Chromalloy.*

*Northwest Airlines, Inc.*, (7th Cir. 1978) 587 F.2d 12. *See also Marshall v. Milwaukee Boiler Manufacturing Co., Inc.*, (7th Cir. 1980) 626 F.2d 1339; *Weyerhaeuser v. Marshall*, (7th Cir. 1979) 592 F.2d 373. In the most pertinent of these decisions, *Chromalloy*, the Seventh Circuit had occasion to assess the sufficiency of a warrant application specifying in relevant part that the requested inspection was part of "a National-Local plan designed to achieve significant reduction in the high incidence of occupational injuries and illnesses found in the metal-working and foundry industry . . . ." 589 F.2d at 1341 (emphasis omitted). The application standing alone was deemed sufficient. The court reasoned that the application described the program and presented facts showing how Chromalloy fit within that program, thereby assuring that "Chromalloy was selected for inspection not as the result of the 'unbridled discretion' of a field agent . . . ." *Id.* at 1343. *See Barlow's, supra.*

■ Looking at this case, we address first the company's argument, based upon *Northwest Airlines*, that in assessing the sufficiency of the State's application we are entitled to rely only upon the affidavits of Venters and Denbo—not the evidence adduced at the hearing. The argument is misplaced. *Northwest Airlines* and *Chromalloy*, taken together, establish that in passing on the validity of a warrant application, a reviewing court is entitled to consider all information offered into evidence in the trial court; what a court on appeal may not do is rely upon information included in appellate briefs which was not before the trial court.

■ It is true, as the Company argues, that Venters's affidavit did not furnish enough information to establish probable cause. *See Chromalloy, supra.* Paragraph 2. of Denbo's affidavit, however, contains language similar to that deemed adequate in *Chromalloy.* In asserting that the Company was chosen for inspection pursuant to the "Target Industries Program List," created to mitigate "high hazards present in the manufacture of steel pipe and tubes" as calculated by government-gathered statistics, the State apprised the trial court of the nature of the program under which the Company was selected for inspection and the reasons why the Company fit within that program. *Barlow's, supra; Chromalloy, supra.* Furthermore, any assumed deficiencies in the affidavits were remedied by Denbo's testimony, which explained the Target Industries Program in detail and how the Company was chosen for inspection.

In short, the trial court had before it adequate information to establish that a "reasonable legislative or administrative standard for conducting an inspection" was satisfied with respect to the Company. *Id.*

The judgment is reversed and the cause is remanded to the Miami Circuit Court, which is instructed to issue the requested warrant.

SHIELDS and SULLIVAN, JJ., concur.