STATE of Indiana on the Relation of the STREAM POLLUTION CONTROL BOARD, Appellant (Plaintiff Below),

v.

TOWN OF WOLCOTT, Board of Trustees of the Town of Wolcott, Appellee (Defendant Below).

No. 2-581A143.

Court of Appeals of Indiana, Second District.

March 30, 1982.

Linley E. Pearson, Atty. Gen., Mary Ann Habeeb, Deputy Atty. Gen., Indianapolis, for appellant.

Terry L. Smith, Dellinger, Dellinger & Smith, Monticello, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

The Stream Pollution Control Board (Board) appeals from the trial court's refusal to enter an injunction ordering the Town of Wolcott (Wolcott) to either cover or remove refuse from an open dump, the Board claiming the trial court abused its discretion.

We reverse and remand.

## FACTS

Wolcott operated and maintained an open dump which was used by the public from 1950 until 1978. The Board was notified in 1978 of the existence of the dump and after inspecting the site discovered a large amount of refuse, including junk cars, refrigerators, stoves, cement, asphalt, washing machines, oil drums, furniture, and fires which burned uncontrolled from time to time.

The Board sought an injunction ordering Wolcott to grade and seed the area after it had (1) hauled all refuse to a sanitary landfill, or (2) compacted and covered all refuse with at least two feet of soil (a requirement found in regulations pertaining to sanitary landfill sites, *see* 330 Ind.Admin.Code 4–5–13). At the hearing on the request for an injunction, the contract purchaser of the dump (Boles) disclosed that he intended to remove the salvageable refuse and mound the non-salvageable refuse. No dirt cover would be placed over the garbage; only dirt which might incidentally be raised by the bulldozer blades during mounding would be mixed with this heap of refuse.

The court entered an injunction prohibiting Wolcott from *operating or maintaining* an open dump, but refused to order refuse to be covered or removed. Although it found that Wolcott had operated and maintained an open dump, the court also found that it was powerless to order Wolcott to either cover or remove the garbage.

The findings and judgment of the court were:

## JUDGMENT

The Court having heard the evidence and having received the Petitioner's Trial Brief, the Court now finds as follows:

1. The defendants admit retorical [*sic*] paragraphs 1 through 6 inclusive of Plaintiff's Complaint and Deny Retorical [*sic*] Paragraphs 7 through 11.

2. The parties hereto agreed that a permanent injunction be issued enjoining the operation of any open dump on said site.

3. The Plaintiff's witness concurred at the trial that the present fencing and present signs were sufficient to notify the public that the area was not to be utilized as a public dump and further that said area was apparently not being used as a dump.

4. The parties at the trial and in accordance with the Answer to Defendants Interrogatory # 18, acknowledged the legal requirement of unrestricted public access to cemeteries. Neither party has complained or requested relief from the existing ingress and egress. Thus, this judgment shall not modify the existing ingress and egress to the cemetery.

5. The *Plaintiff requested an Order of Mandate requiring either*:

# 64

(a) *compact and cover all of the refuse at this site with at least two (2) feet of soil,* in acceptable contours such that final cover shall have a slope of not less than two (2) precent [*sic*] and shall have no depressions that will cause ponding of water, perform final grading on the site, and seed the area with suitable vegetation to control erosion; or,

(b) *haul all refuse at the site to an approved sanitary landfill* and contour, grade and seed the site as set out in (a) above.

The plaintiff has submitted a Trial Brief to the Court specifically addressing the issue of its authority to require the Defendants to comply with the terms and provisions of IAC 4–5–13 which are provisions relating to sanitary landfills.

6. In accordance with the Plaintiff's Answer to Defendants' Interrogatory # 1, *the Court finds that the site in issue was an open dump.*

7. In accordance with the Plaintiff's Answer to Defendants' Interrogatory # 8, the Court finds *that the requirements as cited above refer to sanitary landfills.* The Court finds *that inadequate statutory authority exits [sic] to require compliance with terms and provisions of IAC 4–5–13 which is the sanitary land fill statute.*

8. The Defendant, Town of Wolcott, did not undertake to comply, construct and maintain a sanitary landfill, and thus the defendants shall not be required to comply with the rules and regulations relating thereto.

9. *The Court further finds that open dumping ceased September 1, 1978, and that the contract purchaser, James Boles, testified that he intended to clean up and improve the area which apparently will assist in the resolution of the controversy.*

## CONCLUSIONS OF LAW

1. The *Court* finds that the law is with the plaintiff and against the defendant insofar as a permanent injunction *enjoins the defendant from operating and maintaining an open dump. In all other respects the law is with the defendant and against the plaintiffs.*

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendants, the Town of Wolcott and the Board of Trustees of the Town of Wolcott, their agents, employees, assigns and successors in interest be and the same are hereby permanently enjoined from operating an open dump which was the subject of this lawsuit. (Emphasis added).

From this decision the Board appeals.

## ISSUE

Our treatment of one issue only is dispositive of this appeal:

Was the trial court powerless to do anything more than enjoin Wolcott from operating and maintaining an open dump?

PARTIES' CONTENTIONS—The Board emphasizes that the Legislature has declared open dumps to be public nuisances, prohibited their operation or maintenance, prohibited the disposal of garbage other than by means of a sanitary landfill or a method approved by the State board, and provided for injunctive relief. Because no specific remedial action other than "injunctive or mandatory relief" is suggested by statutes or regulations bearing directly on open dumps, the regulations pertaining to sanitary landfills (which require coverage of refuse, etc.) may be used as a guideline in framing abatement of the nuisance.

Wolcott counters that the legislature intended to prohibit the affirmative act of open dumping; however, the legislature did not forbid the passive act of allowing refuse previously dumped to remain uncovered. Consequently, a court may prohibit the future accumulation of refuse (the cessation of operation or maintenance) in an open dump, but may not order the removal or coverage of refuse which has already been dumped.

## DECISION

CONCLUSION—A trial court under these circumstances may, within its discretion, or-

der the removal or coverage of refuse at an open dump.

■ We recognize that the grant or denial of an injunction is a discretionary matter for the trial judge, whose action will be reversed only upon a showing of abuse. *Green v. Board of Commissioners,* (1969) 251 Ind. 535, 242 N.E.2d 844; *State ex rel. Department of Natural Resources v. Mason,* (1981) Ind.App., 416 N.E.2d 1312; *Indiana Department of Welfare, Medicaid Division v. Stagner,* (1980) Ind.App., 410 N.E.2d 1348. As a court of appeal we engage in any reasonable presumption in favor of the trial court; we do not presume error, but affirm the trial court's decision if it is sustainable on any valid legal theory. *Thornton v. Pender,* (1978) Ind., 377 N.E.2d 613, 620; *In Re Marriage of Dreflak,* (1980) Ind. App., 402 N.E.2d 1284, 1285. Our judgment is not substituted for the trial court's even though the circumstances might have justified a different result. *Terry v. Terry,* (1974) 160 Ind.App. 653, 313 N.E.2d 83. Rather, only when the trial court's action was clearly against the logic and effect of the circumstances will an abuse of discretion be found on appeal. *McFarlan v. Fowler Bank City Trust Co.,* (1938) 214 Ind. 10, 12 N.E.2d 752.

■ One method by which an appellant may show that the trial court clearly acted against the logic and effect of the circumstances is to demonstrate the court's misinterpretation of the law. *City of Elkhart v. Middleton,* (1976) 265 Ind. 514, 518, 356 N.E.2d 207, 210; *In re Marriage of Miles,* (1977) 173 Ind.App. 5, 362 N.E.2d 171; 42 Am.Jur.2d *Injunctions* (1969 & Supp. 1981). And so it is here.

The State tilts with no windmill in maintaining the trial court erroneously concluded that it was without power to order Wolcott to cover or remove the refuse. There is a statutory basis for such power. We have but to examine the statutes in force when this dispute arose, being guided by certain rather elementary rules of statutory construction.

■ In determining legislative intent, we must examine the entire statute, prior versions, changes made, and the reasons for making them. *Bowman v. State* (1979), Ind.App., 398 N.E.2d 1306; *Livingston v. Consolidated City of Indianapolis* (1979), Ind.App., 398 N.E.2d 1302; *Merimee v. Brumfield* (1979), Ind.App., 397 N.E.2d 315. We are bound "to prevent absurdity and hardship and to favor the public convenience." *Walton v. State* (1980), Ind., 398 N.E.2d 667, 675 (quoting *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173).

■ Another fundamental rule of statutory construction is that statutes relating to the same subject matter must be construed together. *Schrenker v. Clifford* (1979), Ind., 387 N.E.2d 59; *State ex rel. State Board of Tax Commissioners v. Daviess Circuit Court* (1967), 249 Ind. 580, 230 N.E.2d 761; *Connell v. City of Logansport* (1979), Ind.App., 397 N.E.2d 1058. And, "[w]e are bound to construe legislation 'in such a way as to oppose prejudice to public interest'... [S]ocial legislation is construed in favor of those intended to benefit from it." *State v. Kokomo Tube,* (1981) Ind.App., 426 N.E.2d 1338, 1345.

Two statutes relate to open dumps. The first is the Environmental Management Act, Ind.Code § 13–7–1–1 *et seq.*, enacted in 1972. In IC § 13–7–4–1 of that Act it is expressly provided that no person shall

"(d) *Dump or cause or allow the open dumping*[1] of garbage or of any other solid waste in violation of regulations adopted by the appropriate agency;

(g) *Conduct any* salvage operation or *open dump by open burning*[2] *or burn or*

---

1. "The term *'open dump' means* the consolidation of solid waste from one or more sources or the disposal of solid waste at a single disposal site that does not fulfill the requirements of a sanitary landfill or other land disposal method as may be prescribed by law or regulations, all without cover and without regard to the possi-

bilities of contamination of surface or subsurface water resources; the term *'open dumping' means* the act of disposing of solid waste at an open dump" (Emphasis added). I.C. § 13–7–1–2(8).

2. "The term *'open burning' means* the combus-

*cause or allow the burning of any solid waste* in a manner which violates either IC 13–1–1 [13–1–1–1—13–1–1–10] or the regulations adopted by the board or by an appropriate agency" [3] (Emphasis added).

That Wolcott did allow the open dumping of garbage in violation of statute and that Wolcott did "conduct" or "allow the burning of solid waste" in an open dump, is not contested. Wolcott insists, however, that it is no longer violating IC § 13–7–4–1 because it has closed the dump to the public— it has ceased to "operate or maintain an open dump." This is a mere dalliance with words.

Aside from the rather specific language of the applicable statutes, there is an interpretive rule of the Environmental Management Act which plows under that argument. The rule states that "[i]n this article the present tense includes the past and future tenses, and the future tense the present unless otherwise provided." IC § 13–7–1–2. In 1978, Wolcott admittedly was causing or allowing the open dumping of solid waste *after* the statute was enacted (1972), so under the terms of the Act the continued presence of the dump is a continuing violation.

Our interpretation of the Environmental Management Act is reinforced by the second article dealing specifically with open dumps—the Refuse Disposal Act, IC § 19–2–1–1 [4] *et seq.*, enacted in 1965. The purpose of this Act is

to authorize counties, cities and towns to establish, acquire, construct, install, operate and maintain certain facilities for the collection and disposal of refuse and *to declare open dumps to be inimical to human health.*

IC § 19–2–1–1 (emphasis added).

Further, the disposal of refuse by means other than a sanitary landfill (or a method approved by the State Board) is declared a nuisance inimical to human health by IC § 19–2–1–31,[5] which expressly prohibits any person from (1) disposing of refuse except at a sanitary landfill unless by a method approved by the Board; or (2) operating or maintaining an open dump. A violation of this statute is made a class C infraction, and provision is made for the State Board to seek "injunctive or mandatory relief." The statute reads:

(a) *Disposal of garbage, rubbish, and refuse on lands may be made only through use of sanitary landfills or by means of incineration, composting, garbage grinding, or other acceptable methods approved by the state board. No person may operate or maintain an open dump.*

(b) No person may operate or maintain facilities for the collection and disposal of refuse except as set out in section 3[19–2–1–3] of this chapter or under rules and regulations adopted by the state board.

(c) *Any failure to comply with this section constitutes the operation of a nuisance inimical to human health.* The prosecuting attorney of each judicial circuit to whom the secretary of the state board, his authorized agent, or local health officer reports such a failure shall cause appropriate court proceedings to be instituted.

(d) A person who fails to comply with this section commits a *class C infraction. If the offense is of a continuing nature, each day of failure to comply constitutes a separate offense.*

(e) *The state board may institute proceedings for injunctive or mandatory relief* through the attorney general against any person, political subdivision of Indiana, or any agency of the state or federal government *for any failure to comply with this section.*

IC § 19–2–1–31 (emphasis added).

■ In the context of nuisances, passive as well as affirmative conduct is included

---

tion of any matter in the open or in an open dump;" (Emphasis added). I.C. § 13–7–1–2(7).

**3.** Open burning and open dumping are also prohibited by regulation. *See* 330 Ind. Administrative Code 4–1–2, 4–5–7(7), 4–5–7(8).

**4.** Now IC 36–9–30–1, *et seq.*

**5.** Now IC 36–9–30–35. Enforcement was first delayed until 1969 and later until 1972.

within the meaning of "maintain." *Field v. Area Plan Commission of Grant County*, (1981) Ind.App., 421 N.E.2d 1132; *See DeSchamps v. Board of Zoning Appeals*, (1961) 241 Ind. 615, 174 N.E.2d 581; Restatement (Second) of Torts § 364 (1965) ("Creation or Maintenance of Dangerous Artificial Conditions"—dangerous artificial condition actionable based upon mere knowledge of condition).

In *Field v. Area Plan Commission of Grant County, supra*, the appellant argued that a statute which defined a "junkyard" as a place where certain matter "is accumulated and/or stored and is or may be salvaged for reuse or resale," and which forbade the maintenance of a junkyard, did not prohibit the storage of materials acquired *after* an order to cease maintenance of the junkyard. The court had a different view:

> Were we to interpret Field's argument as proposing that the statute only allows prohibition of the accumulation of materials acquired *after* the time of the order, it would result in a strained and absurd construction of the statute. *It is the maintenance of a passive condition* which constitutes the type of offense involved here resulting in a continuing violation of the ordinance. Thus, under the statute and in view of the purpose of the act, we believe the legislature intended to enjoin the maintenance of a common nuisance. (Emphasis supplied)

*Id.* at 1141.

And it could be added,[6] the passage of time aggravates the condition created by an open dump.[7]

■ Having concluded on the basis of the applicable statutes that the passive continued maintenance of an open dump is pro-

hibited and that mandatory relief is explicitly permitted by statute, it can be readily inferred that the trial court had the power to order more than closure of the dump.[8] It also had the power to order abatement of the open dump by designating procedures found in the regulations pertaining to sanitary landfills (coverage of the refuse or, by implication, its removal to a sanitary landfill) so as to abate the nuisance.

We recognize the court's statement that the contract purchaser "testified that he intended to clean up and improve the area which will assist in the resolution of the controversy." This statement is not a finding that the contract purchaser would remove or cover the refuse, nor is it a finding that his "intended" actions are sufficient to abate the nuisance. Indeed, the evidence reveals that his intention was to mound the non-salvageable refuse without cover.

To recapitulate, Wolcott held open a dump in clear violation of statute and regulation. Doing so is a clear violation of statutes declaring open dumps to be a public nuisance harmful to public health. Because the statute also empowers the trial court to enter a mandatory injunction for violations, the court could do more than prohibit further dumping. The court could have entered a mandatory injunction ordering the nuisance abated, which order could have included the coverage or removal of the refuse. Thus, the court's conclusion that it was without power to do more than enter an injunction requiring closure of the dump was erroneous and an abuse of discretion.

REVERSED and REMANDED for further proceedings consistent herewith.

SULLIVAN and SHIELDS, JJ., concur.

---

**6.** Whether dumps which have ceased operation before the effective date of the statute are public nuisances subject to mandatory injunction, we do not decide.

**7.** "The disadvantages of open dumping are numerous. The site readily becomes a breeding ground for rodents, objectionable insects, and other animals. It is an aesthetic eyesore. It is likely, so long as the dumped refuse is uncovered, to undergo spontaneous combustion. The

mere covering of such collectively dumped refuse avoids some of the worst problems of an open dump; yet that is not the entire story." Note, *The Legal Framework of Solid Waste Disposal*, 3 Ind. Legal Forum 415, 420–21 (1970) (emphasis added).

**8.** It is not uncommon for a trial court to suggest or to order specific methods of elimination. 58 Am.Jur.2d *Nuisances* § 179 (1971 & Supp. 1981).