Ernest D. DeHART, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–1283A400.

Court of Appeals of Indiana,
Third District.

Nov. 26, 1984.

Rehearing Denied Jan. 15, 1985.

J. Robert Vegter, II, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Presiding Judge.

Ernest D. DeHart was convicted of two counts of disposal and storage of hazardous waste material without having obtained a permit, a Class A misdemeanor, in violation of IC 13–7–13–3(c)(2).[1]

DeHart raises two issues on appeal:

I. Whether the trial court erred in overruling DeHart's motion to Dismiss and Motion for Directed Findings in that the statute under which DeHart was convicted is an ex post facto law as applied to DeHart.

II. Whether the trial court erred in overruling DeHart's Motion to Dismiss and Motion for Directed Findings in that the action against DeHart was not timely filed within the statutory period of limitations. Affirmed.

Stipulations filed with the trial court indicate that DeHart was the president and chief operating officer of two Indiana corporations which were engaged at various times during the 1970's in solvent recovery and industrial waste disposal operations at two sites known as Midco I and Midco II in Lake County, Indiana. Tests by the Indiana State Board of Health and the United States Environmental Protection Agency confirmed the presence at both sites of hazardous waste materials in the soil as well as in metal storage drums which were in varying stages of decomposition. It was further stipulated that the described materials remained at both sites as of July 22, 1981. Uncontroverted testimony at trial established that a substantial amount of these materials was placed at both sites during the time that DeHart operated his corporations there. The State introduced undisputed evidence that at no time did DeHart or his corporations apply for or receive any permit to treat, store, or dispose of hazardous waste. The State stipulated the fact that a portion of the assets of the corporation operating at the Midco I site was sold in October 1977, and that neither DeHart nor the corporations he controls have placed any additional waste materials at either site since the end of 1977.

DeHart's contentions of error are predicated upon the stipulations and his own assertions that he ceased operations at the Midco I and Midco II sites after 1977. Thus, he argues, his conduct relative to the storage of hazardous waste was completed at the end of 1977, before a permit was required, making the retroactive application of the 1980 statute an ex post facto law with regard to his pre-1978 conduct. Alternatively, he urges that by the time the Information was filed in July, 1981, the two year misdemeanor statute of limitations had long since expired for acts occurring in 1977.

Our conclusion that DeHart's violation constitutes a continuing offense is dispositive of both issues raised, therefore our discussion will be consolidated accordingly.

The Environmental Management Act, IC 13–7–1–1 et seq. (Burns Code Ed., 1980), in order to

"preserve, protect and enhance the quality of the environment so that, to the extent possible, future generations will be ensured clear air, clean water, and a healthful environment."

provides, among other things, for the regulation and control of waste materials. Enforcement of the Act is effected by both civil and criminal penalties.

1. "For purposes of this section, 'person' means, in addition to the definition in IC 35–41–1–2, any responsible corporate officer.
   (c) Any person who knowingly:
   (1) Transports any hazardous waste to a facility which does not have an operation permit or approval to accept such waste;
   (2) Disposes, treats, or stores any hazardous waste without having obtained a permit therefor; . . .

shall be punished by a fine of not more than twenty-five thousand dollars [$25,000] for each day of violation, or by imprisonment not to exceed one [1] year, or both. If the conviction is for a violation committed after a first conviction of such person under this section, punishment shall be by a fine of not more than fifty thousand dollars [$50,000] per day of violation, or by imprisonment for not more than two [2] years, or both." (Burns Code Ed., 1980.).

The permit requirements and penalty provisions of the Act relating to hazardous wastes, were added by the legislature in 1980. IC 13–7–8.5–1 through 8, IC 13–7–13–3 (as added by Acts 1980, P.L. 103, §§ 9 and 17). The first chapter directs the Environmental Management Board to adopt regulations for the proper and safe transportation, storage and disposal of hazardous wastes and establishes a permit requirement for hazardous waste facilities. IC 13–7–8.5–4 & 5(a). Hazardous waste facilities in existence on September 1, 1980 were entitled to a variance. IC 13–7–8.5–5(c).

The state or condition of hazardous waste is variously defined in the Act at IC 13–7–1–2:

"(16) 'Disposal' means the discharge, deposit, injection, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters;

(21) 'Storage,' when used in connection with hazardous waste, means the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste;

(22) 'Treatment,' when used in connection with hazardous waste, means any method, technique, or process, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. This term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous,"

There is no question that the hazardous waste materials at Midco I and Midco II were not undergoing treatment of any kind. The evidence showed that some of the hazardous material on the sites fit within the definition of disposal, i.e., some had been placed directly into large pits on the ground, which arguably could be interpreted as a completed act as of the time the material was so placed. There was ample evidence, however, of substantial quantities of hazardous waste standing around in damaged and deteriorating barrels, a condition which fits precisely into the statutory definition of storage and expressly negatives disposal. The definition contemplates a continuing condition—containment either temporarily or for a period of years which does not constitute disposal. By differentiating between storage and disposal it is clear the legislature sought to control the very conduct at issue in this case, that is, stockpiling huge quantities of dangerous wastes then abandoning the hazard to the potential detriment of the environment. DeHart's argument would require us to ignore the statute's obvious intent to prevent the unauthorized maintenance of hazardous waste in a condition which does not constitute safe and proper disposal.

Where the language of the statute is clear and plain, there is no room for construction and we have no power to resort to construction for the purpose of limiting or extending its operation. *Meade Electric Company v. Hagberg* (1959), 129 Ind.App. 631, 159 N.E.2d 408, 413.

Further support for the conclusion that DeHart's offense is a continuing one comes from the penalty section of the statute wherein violation of the permit requirement may be punished by a fine of up to $25,000.00 for *each day* of violation. IC 13–7–13–3(c)(2). Furthermore, the legislature anticipated and made provision for pre-existing hazardous waste sites by permitting a variance from the permit requirement for sites in existence prior to September 1, 1980. IC 13–7–8.5–5(c).

Even though DeHart's last contact with the hazardous waste or the sites on which it was stored may have been in 1977, as the person responsible for its being there in the first place, he remained responsible for its continued storage there

and was required to apply for a permit or a variance by July, 1981. The State correctly argues that ownership is not an element of the offense. Nor is it necessary that there be any sort of commercial operation in connection with the hazardous waste. The statute defines a hazardous waste facility as "a plant or *site* where hazardous waste is subjected to treatment, storage, disposal or recovery." IC 13–7–1–2(18). (Emphasis added.)

Support for the conclusion that the condition is a continuing violation for which the original wrongdoer is liable may be found in analogous cases dealing with nuisance where the general rule is said to be that one who creates a nuisance on land may not transfer the liability for the erection of the nuisance by conveying or alienating the land. *Graham v. Chicago, I. & L. Ry. Co.,* (1906), 39 Ind.App. 294, 77 N.E. 1055, 1060 (Wiley, J. dissenting); *Metzger v. Schultz* (1896), 16 Ind.App. 454, 43 N.E. 886, 887. In *State v. Town of Wolcott* (1982), Ind. App., 433 N.E.2d 62 the State sought an injunction against the town which operated and maintained an open dump prior to selling it. Construing the statute which prohibited the maintenance of open dumps, the court held that passive as well as affirmative conduct is included within the meaning of "maintain". In the face of the town's claim that it was no longer violating the statute because it closed the dump and ceased to operate it, the court held that the continued presence of the dump constituted a continuing violation of the statute. *Id.* at 66–67. Similarly, in *Field v. Area Plan Commission of Grant Co.,* (1981), Ind. App., 421 N.E.2d 1132 the defendant challenged the propriety of a mandatory injunction ordering him to clean up junk stored on residential property in violation of a zoning ordinance. He claimed the court could only prohibit the further accumulation of materials acquired after the order. In affirming the trial court, this Court held that it is the maintenance of a passive condition which constitutes the type of offense involved, resulting in a continuing violation of the ordinance. *Id.* at 1141.

None of the authorities cited by DeHart even remotely support his contention that his conduct was complete in 1977 and therefore shielded from prosecution by either the statute of limitations or ex post facto defense.

Where there is a continuing duty to do some act, the statute of limitations does not apply where some portion of the offense is within the period of limitations. *Corpus Juris Secundum,* Criminal Law § 227 at 589. *See Jalbert v. State* (1925), 196 Ind. 81, 147 N.E. 149. Here, assuming *arguendo* that there was no permit requirement when DeHart first placed hazardous waste on the Midco I and II sites; his continued storage of the materials after the 1980 amendments to the statute gave rise to a duty to apply for the permit or the variance for pre-existing sites.

The same rationale is applicable to DeHart's ex post facto claim. He was not convicted of the original act of *placing* the hazardous waste on the sites, an act which arguably might be considered complete in 1977. He was convicted of storing the materials without a permit. Again, a look at the statute supports this distinction. The penalty provisions of the statute separate into distinct offenses the transportation of hazardous waste to a facility which does not have a permit, and the disposal, treatment, or storage of such waste without having obtained a permit. IC 13–7–13–3(c)(1) and (2).

In a closely analogous case from Illinois the court disposed of the defendant's statute of limitations and ex post facto claims with similar logic. In *People v. Jones* (1946), 329 Ill.App. 503, 69 N.E.2d 522, the defendant was charged with permitting an abandoned oil well to remain unplugged under a statute enacted nearly three years after the well was abandoned. The court held that the condition was a continuing one and each day the well remained unplugged constituted a new offense. Thus the defendant was neither convicted of any affirmative act such as would toll the statute, nor was he convicted of completed conduct which was lawful prior to the pas-

sage of the statute, he was convicted of the continued maintenance of a condition prohibited by the act. *Id.* 69 N.E.2d at 524.

Because we conclude that the ongoing existence of hazardous waste. materials in damaged and decaying drums at Midco I and Midco II sites constitutes a continuing condition which fits within the statutory definition of storage which requires a permit, we find no merit in either of DeHart's defenses. The trial court's judgment is affirmed.

GARRARD and HOFFMAN, JJ., concur.