## METZGER v. SCHULTZ, BY NEXT FRIEND.

[No. 1,776.   Filed April 22, 1896.   Rehearing denied Dec. 16, 1896.]

NEGLIGENCE.—*Gas Explosion.*—*Defective Gas Pipes.*—*Knowledge of Owner.*—A landlord is not liable for an injury to an employe of her tenant resulting from an explosion of gas, caused by defective plumbing done by a former tenant of the building, who employed a competent plumber to do the work, in which the defects were not apparent and of which the landlord had no actual knowledge.

EVIDENCE.—*Presumption.*—Where the undisputed testimony showed that a gas pipe was properly supported by chain or wires suspended from the joist of the building, evidence, after an explosion of such gas pipe, that no chain or wire was found, does not overcome the presumption that such pipe was properly supported at the time it was placed in the building.

From the Marion Superior Court. *Reversed.*

*Lucius B. Swift,* for appellant.

*Vinson Carter* and *William T. Brown,* for appellee.

LOTZ, J.—This action was instituted by the appellee against the appellant and one Henry C. Pomeroy. The defendants filed separate demurrers to the amended complaint and Pomeroy's demurrer was sustained and a judgment was rendered in his favor for costs. The appellant answered by general denial, and the trial resulted in a verdict of $1,000.00 for the appellee, for which judgment was rendered in his favor, after appellant's motion for judgment upon answers to interrogatories and her motion for a new trial had been overruled. The appellant appeals to this court and asks a reversal upon several errors assigned.

The amended complaint alleges that October 1, 1887, Alexander Metzger, the husband of the appellant, owned certain real estate in Indianapolis, upon the southwest corner of Pennsylvania and North streets, upon which was a two-story brick building with a cellar, leased and occupied by the defendant, Pomeroy, for a drug store. That immediately west of and adjoining said drug store was another brick building, with a cellar. That the two cellars were separated by a brick wall, with no communication between them. That on said day Pomeroy did some gas fitting in the drug store cellar, and did it negligently. That the pipes were old, rusty, defective, and improperly constructed. That no elbows were used, but that when

a turn was to be made the pipes were bent, causing a constant, severe, and unusual strain, and the pipes were loosely fastened to joists.

That Alexander Metzger died August 4, 1892, devising said real estate to his wife, the appellant. That afterwards Pomeroy surrendered the drug store premises, including said pipes to the appellant. That the appellant with full knowledge of the defective condition of the pipes maintained the same in such condition, and on September 1, 1892, leased said drug store premises, including said fixtures, to Thomas C. Potter, and until September 21, 1893, with full knowledge of said defective condition, received rent for said premises.

That on September 21, 1893, said second building immediately west of said drug store was leased to Jones and Berry as tenants of the appellant, for a grocery, and the appellee was employed by said firm.

That by reason of said defective gas fitting, the pipes in the drug store cellar cracked and broke so that the gas escaped and diffused itself through said cellars and buildings, and especially in said drug store cellar.

That on said day, September 21, 1893, said gas, escaping as aforesaid, exploded in said drug store cellar while the appellee was engaged in his usual duties in said grocery and cellar adjoining said drug store, and hurled the appellee down, and caused large quantities of brick and mortar from said cellar wall to fall upon him, injuring him externally and internally, and burning him.

The undisputed evidence in this case shows that in 1887 one Alexander Metzger was the owner of the real estate described in the complaint. The ground floor of the building was divided into two rooms and the cellar into three rooms. Alexander Metzger demised the east room and cellar to one Henry C. Pomeroy for a

drug store. While Pomeroy was in possession he voluntarily and of his own accord caused a gas pipe to be connected on the north side of the cellar with the Consumers' Gas Trust Company's main, for the purpose of lighting the drug store by natural gas. He employed a plumber and gasfitter for this purpose. A brass stop cock was put in the pipe near the wall where the connection was made. This pipe was necessarily many feet in length in order to reach from the connection to the point where it rose to conduct the gas into the drug store, and it was deflected or sprung from a straight line. Alexander Metzger died August 4, 1892, and devised the real estate to his wife, the appellant. Afterwards Pomeroy sold his drug business to one Thomas C. Potter and gave him the immediate possession of that part of the premises leased by him. Potter continued in possession and paid rent to appellant's agents for several months. On the 18th day of August, 1892, the appellant demised the drug store premises to Potter for the period of three years. On September 21, 1893, the west end of the building including the cellar thereunder, was leased to Jones and Berry for the purposes of a grocery store, and they were engaged in conducting that business therein. The appellee was in their employ as a clerk, and descended into the cellar under the grocery store, when an explosion occurred and he was badly burned. There were two explosions in rapid succession. One of the explosions partly demolished one of the partition walls of the cellar and large quantities of brick and motar were hurled in the direction of the gas pipe. After the explosion the gas pipe was found broken off at the brass stop cock. The appellant at no time before the explosion had any actual knowledge of the condition of the gas pipe.

Appellant's contention is, that as she came into the

possession of the property, with all the existing conditions, and that as she had no actual knowledge of any defect in the pipe, she is not chargeable with negligence in keeping the premises in a reasonably safe condition, and, therefore, not responsible for the injuries to the appellee.

This presents one of the principal questions involved in this controversy.

The general rule is that every person must so use his own property as not to injure others. Anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights is an actionable nuisance. Cooley Torts, section 565. A nuisance may result from the negligent acts of commission or omission. It is also the general rule that the occupier of lands is *prima facie* responsible for any nuisance maintained thereon and not the owner. But to this rule there are several well defined exceptions. The owner is responsible if he creates a nuisance and maintains it. He is responsibe if he creates a nuisance and then demises the premises with the nuisance thereon, although he is out of possession. He is liable if a nuisance was erected on the land by a prior owner or by a stranger, and he knowingly maintains or continues it. He is liable if he demised the premises and covenanted to keep them in repair, and omits to repair, thereby creating a nuisance. He is liable if he demise the premises to be used as a nuisance, or to be used in any way so that a nuisance will necessarily be created. But a grantee or devisee of lands upon which there is a nuisance at the time the title passes is not responsible for the nuisance until he has notice of its existence; and in a certain class of cases, until he has been requested to abate the same. *Penruddock's Case,* 3 Coke, Part 5, p. 101, is one of the earliest cases bearing on these questions.

It was there decided that an action will lie against one who erects a nuisance without any request to abate it; but not against the feoffee, unless he does not remove the nuisance after request. This case has been generally followed by the English and American courts. The first rule announced in that case is a reasonable one. If the owner create a nuisance, knowledge of its existence is necessarily involved in the act. If he suffer or permit the premises to become out of repair while he is the occupant, so that a nuisance results, the law implies notice. The second rule has been generally applied to the obstructions of private ways, ancient lights, the diversion of waters and watercourses by dams, embankments, etc. This rule, when applied to such cases, is also a very reasonable one, because otherwise the grantee or devisee of the property on which the nuisance exists might be subjected to great loss on account of conditions of which he was ignorant, and damages which he never intended to occasion. Often such conditions cannot be easily known except to the party injured, and so long as he rests in silence and does not make any complaint, the new owner or occupant has the right to presume that the structures and appliances thereon were rightfully erected, and he is not bound to know or suspect that before he became the owner, one party committed a wrong and the other submitted to it. The case of *Ahren* v. *Steele*, 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, whilst differing widely in its facts from the case at bar, is a very instructive case, and the authorities bearing upon the above propositions are reviewed at great length in the able prevailing and dissenting opinions.

In the case at bar, neither the appellant nor her devisor covenanted with the tenants to erect new structures or make repairs. In the absence of such

covenants it was the duty of the tenant to keep the premises in proper repair, and if he erected new structures or put in new appliances for his own accommodation, he alone was liable for the consequences. If the tenant, Pomeroy, had remained in possession up to the time of the explosion, it is apparent that appellant would not have been liable. When the landlord has not covenanted to make repairs he has no right to enter upon the premises. The exclusive right is in the tenant. Does the fact that Pomeroy sold his business to Potter, who went into immediate possession and became the tenant of appellant change her responsibility? If Potter's tenancy was but a continuation of Pomeroy's, then the appellant is not liable; but it was not a continuation. A new tenancy was created. She demised the premises to Potter in their existing condition with the defective pipe. Under the rule above announced she was responsible for the nuisance existing thereon, if she knew that there was a nuisance. Appellant's counsel insists, that as but an instant elapsed between the tenancy of Pomeroy and that of Potter, that she could not have had notice of the nuisance.

It is true that she had no actual notice, but she had it in her power to have ascertained the existing conditions before accepting Potter as a tenant. If she had the power, and failed to exercise it, she will be bound as if she had notice. If a landlord demise his property, the law requires him to know its condition at the time he accepts a tenant. The rights of others are frequently involved by the condition in which the premises are maintained. Any person who conducts upon his premises any dangerous business, or has thereon any dangerous machinery or substance, not in themselves unlawful, is in duty bound to exercise reasonable care and vigilance to see that no harm

comes to others in consequence thereof. But the landlord is not an insurer. There are many businesses, machinery, and appliances not nuisances, *per se*, that are attended with danger. When the landlord has exercised reasonable care in respect thereto, he is exonerated from liability. If, in the erection of structures and appliances, and in conducting business on his premises, he has employed and relied upon persons who are careful, prudent, and skillful, and has exercised care to keep his premises in a safe condition, he has done all that the law requires. The appellant further insists, that as a competent and skillfull person was employed to do the gas fitting, she is not responsible for the injury to appellee.

There was some evidence in this case that tended to show that the gas fitting was improperly and unskillfully done; that there was a strain upon the pipe which might have caused it to break, especially at the brass stop cock. But there was no evidence that the gasfitter who did the work was unskillful or incompetent, except as that fact might be inferred from this particular work. On the other hand, the undisputed evidence shows that the gasfitter who made the connection was a plumber, steam and gasfitter of many years' experience. A skillful person may occasionally perform a piece of work in an unskillful manner. The inference that one is an unskillful person cannot be established from a particular isolated piece of work, especially when the undisputed evidence shows that he is a workman of many years' experience. If the workman were sued for his own unskillfulness, he would be compelled to answer; but when a master or landlord is sued for a liability growing out of failure to employ a competent and skillful person, it is not enough to show that the workman did a particular piece of work in an unskillful manner. Before the

jury was warranted in concluding that the gasfitter who did the work was unskillful and incompetent there must be some evidence fairly tending to establish it. The rule is that when there is any evidence, having legal weight, bearing upon a given issue or fact, the party producing it is entitled to go to the jury thereon. If the evidence adduced is so slight and inconclusive that no rational or well constructed mind can infer from it the fact it is offered to establish, the court may direct the verdict. *Sunnyside Coal & Coke Co.* v. *Reitz*, 14 Ind. App. 478; *Conner* v. *Giles*, 76 Me. 132; Thompson Trials, sections 2246, 2249.

If Pomeroy had remained in possession until the explosion, he would not have been liable under these circumstances. He was not required to set his judgment against that of a person of technical skill. If Pomeroy, the person who had the work done, was not liable then the appellant is not liable.

It may be conceded that the appellant, when she made the demise to Potter was bound to take notice of the dangerous and explosive character of gas, artificial and natural, and to take notice of such defects as were apparent and might have been easily ascertained by a person of ordinary prudence. But there was no evidence in this case that the defect in the pipe was of such a character that a person of ordinary prudence could have ascertained it. The pipe had been in use for more than four years and had performed good service during all that time. She was not required to override the judgment of experienced plumbers and gasfitters and persons of technical skill. She was entitled to rely upon their skill and judgment. In our opinion the appellant was guilty of no actionable wrong.

The case of *Helwig* v. *Jordan*, 53 Ind. 21, is urged upon our attention as holding a contrary doctrine. In

that case the nuisance existed at the time of the demise and the landlord had actual knowledge of its existence.  In the case at bar, the appellant was chargeable with notice of the existing conditions, but she was not required to know that those conditions created a nuisance.  In the case last cited, the landlord not only knew of the existing conditions, but he knew that they were equivalent to a nuisance.  It would be a harsh rule, indeed, that would require the landlord to answer for every defect in his property.  If he employs competent and skillful persons in the construction and repair of his premises, and relies upon their judgment, he has done all that should be required of a reasonable and prudent person.

In this case, Pomeroy, the first tenant, had the right to assume that the work was done in a skillful and safe manner.  The law would have protected him.  Appellant is in no worse condition.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

## On Petition for Rehearing.

Lotz, C. J.—The appellee, in his argument in support of his petition for a rehearing, earnestly insists that we overlooked and failed to consider the point upon which he placed his chief reliance for an affirmance of the judgment, that of negligence in the manner of constructing, and failing to properly support the gas pipe.  Upon this question it is contended that the evidence is conflicting, and that it was therefore a question for the jury and not one upon which this court can arbitrarily say as a matter of law, there was no negligence.

The undisputed evidence shows that a competent and skillful gasfitter was employed to do the work, and his uncontradicted testimony was that he supported

the pipe by chain or wires, suspended from the joist of the building. It was true there was some evidence to the effect that after the explosion no evidence of such support was found. But this evidence was very meager, and related to a time after a large quantity of brick and debris had been hurled with great violence against the pipe and joist. But if it be conceded that no supports were found after the explosion, this does not tend to prove the fact that the pipe was unsupported on the day the appellant leased the premises to Potter. The undisputed testimony showed that the pipe was supported when first erected. The presumption is that it so continued until a cause arose sufficient to destroy such supports. The general rule is that things once proved to have existed in a particular state are presumed to have continued in that state until the contrary is so established by evidence, either direct or presumptive. *Smith* v. *New York, etc., R. R. Co.*, 43 Barb. 225; Lawson Presumptive Evidence, pp. 165, 176.

The burden rested upon the appellee to show that the pipe was unsafe and improperly supported on the day when Potter became the lessee. There was an entire absence of evidence on this point.

Petition overruled.