**Joseph WEISS, Jr. and Brigitte Weiss, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 84–1227.**

United States Court of Appeals, Tenth Circuit.

March 27, 1986.

Shelley B. Don (David L. Hiller with him on the briefs), Denver, Colo., for plaintiffs-appellants.

Nancy E. Rice, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., with her on the brief), for defendant-appellee.

Before BARRETT, LOGAN, and BAL-DOCK, Circuit Judges.

BARRETT, Circuit Judge.

This appeal is taken by plaintiffs-appellants, Joseph Weiss, Jr. and Brigitte Weiss, from a final order of the district court granting summary judgment in favor of defendant-appellee United States. The district court found that under the Federal Tort Claims Act the plaintiffs' first claim was barred by the discretionary function exception under 28 U.S.C. § 2680(a) and plaintiffs' second claim failed to show an actionable duty under Colorado law. Jurisdiction to consider this appeal is conferred upon this court under 28 U.S.C. § 1291.

On August 23, 1976, Joseph Weiss was piloting a helicopter on a search and rescue mission in Buckskin Canyon, near Alma, Colorado. Weiss was searching Buckskin Canyon when he lowered his helicopter to speak to individuals on the ground below. While descending, one of the blades struck an aerial tramway cable about 150 feet above the ground, causing the helicopter to crash. A passenger aboard was killed and Weiss was seriously injured.

The tramway cable struck by Weiss' helicopter was part of an abandoned mining operation and was partially located on federal lands. One end of the cable was connected to a tower erected on federal land. Approximately two-thirds of the length of the cable extended above federal lands.

Weiss and his wife, Brigitte, filed suit in the United States District Court for the District of Colorado under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–2678, and 2680. They alleged two separate negligence claims under section 1346(b) of the FTCA: (1) that the United

States, through the National Oceanic and Atmospheric Administration (NOAA), was negligent in failing to depict the aerial cable as an obstruction on the Denver Sectional Aeronautical Chart, 15th Edition, August 12, 1976 (Sectional Chart); and (2) that under Colorado law the United States, through the Department of Agriculture, Forest Service, owner of the lands on which the aerial cableway was located, was negligent in failing to remove the cable or to attach warning devices to it.

The United States moved for summary judgment on both claims. The United States asserted that the first claim was barred because the decision whether or not to depict the aerial cable on the Sectional Chart was a "discretionary" act falling within the discretionary function exception of the FTCA. 28 U.S.C. § 2680(a). The United States asserted that the second claim for relief was barred because the United States had not erected, maintained, or owned the cable over its land and therefore had no legal duty under Colorado law to remove it or to warn of its existence. The district court granted summary judgment essentially adopting the arguments of the United States. Plaintiffs appeal the district court's grant of summary judgment on both claims.

## I.

Claims for money damages against the United States are barred under the doctrine of sovereign immunity except where the Congress has consented to such claims. *See generally, Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Under section 1346(b) of the FTCA, Congress consented to suits against the United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The Government's liability under section 1346(b) is limited, however, by section 2680 which enumerates exceptions to the waiver of sovereign immunity under the FTCA. For instance, the doctrine of sovereign immunity continues to bar suits against the Government for certain discretionary acts of its employees. Specifically, under section 2680(a) the Government is immune from claims brought under 1346(b) "based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of the federal agency or an employee of the Government, *whether or not the discretion involved be abused.*" 28 U.S.C. § 2680(a) (emphasis added).

In support of its motion for summary judgment, the United States argued that NOAA employees exercised a discretionary function under section 2680(a) in excluding the Buckskin Canyon cable from the Sectional Chart. Plaintiffs contend that the district court misapplied the discretionary function exception in granting the Government's motion for summary judgment. We agree with the district court that the discretionary function exception applies to this claim.

In considering this issue we must first decide whether or not the decision by NOAA cartographers to exclude the Buckskin Canyon cable from the Sectional Chart involved the exercise of discretion. If so, we must then decide whether or not the cartographers' exercise of discretion comes within the discretionary function exception of 28 U.S.C. § 2680(a).

In preparing Sectional Charts, NOAA cartographers are required to follow specifications developed and promulgated by the Inter-Agency Air Cartographic Committee (IACC), a Committee of the United States Government. "These specifications shall be complied with without deviation until such time as they are amended by formal IACC action." (R., Vol. III, p. i). The parties agree that the relevant IACC specifications are, in part, as follow:

**Chapter III**

**1. COMPILATION**

**b. Detail Selection and Density**

(1) Rigid rules to satisfy requirements in the selection and density of chart detail cannot be formulated in view of the multiple requirements. For this reason, the finished product may not necessarily represent optimum in the presentation of chart detail; however, the selection of criteria detailed herein should suffice to serve as *general guidance* in achieving the best overall balance and relativity of the chart features portrayed.

(2) *Utmost discretion must be used in determining the quality and selection of detail to be shown.* Unnecessary information and indiscriminate selection of features is not advisable in congested areas and shall be avoided. However, *all essential information required must still be retained,* especially OUTSTANDING features for use as checkpoints.

(R., Vol. III, p. 14 (emphasis added).)

**6. CULTURE**

**f. Miscellaneous Cultural Features**

(13) *Aerial Cableway, Ski Lifts, Conveyor Belts and Similar Features.*

(a) Only those that may fall in the *obstruction category* or have visual significance from the air shall be shown.

(R., Vol. III, p. 56 (emphasis added).)

**9. AERONAUTICAL INFORMATION, CIVIL FORMAT**

**e. Navigational and Procedural Information**

(6) *Obstructions.*

(a) All cultural features which extend 200 feet or more above surrounding terrain shall be considered as a "vertical obstruction."

*1* The obstruction symbol *shall normally be shown* for obstructions such as TV or radio towers 200' or more above the terrain. Where several obstructions occur within close proximity one to the other, or within a limited area, only the values of the highest shall be shown with the group obstruction symbol. Minor obstruc-

tions which are not in critical locations shall be omitted in congested areas.

*2* Examples of features considered a hazard to low level flight are tanks, factories, lookout towers, smokestacks and elevated features such as cables or pipelines crossing rivers or valleys. These are extremely important because of the hazard to low level flight and the vertical dimension which facilitates identification at a distance.

(b) Obstructions less than 200' in height *should* also be shown if the location is *critical* and *chart congestion permits;* for example, if location on the ground is much higher than the surrounding terrain or very near an airport.

(R., Vol. III, p. 115 (emphasis added).) These specifications can be summarized as requiring *obstructions* to be depicted if they are 200 feet or more in height. Cartographers are encouraged, but not required, to show obstructions less than 200 feet in height if the location is critical *and* chart congestion permits.

Plaintiffs contend that NOAA cartographers had a mandatory duty to depict the Buckskin Canyon cable on the Sectional Chart and their failure to do so constitutes actionable negligence not barred by the discretionary function exception. Plaintiffs urge us to adopt the reasoning of the district court in *Allnutt v. United States,* 498 F.Supp. 832 (W.D.Mo.1980), which considered the mandatory nature of depicting aerial obstructions on a Sectional Chart under facts almost identical to these.

In *Allnutt,* plaintiffs brought suit against the United States for failing to chart or to depict a power line on a Sectional Chart. The relevant IACC specification the court considered required the following: "Power transmission lines, with pictorial pole (pylon) symbols, *shall be shown* on the chart to a density short of over-congestion. . . ." *Id.* at 838–39. Upon review of this specification, the court ruled that "the discretionary function exception does not apply to the mechanical *preparation* of charts when such preparation fails to con-

form to specific IACC standards of specification." *Id.* at 838 (emphasis in original).

We believe the *Allnutt* case can be distinguished from this case. Unlike the specification in the case at bar which states that obstructions less than 200 feet *should* also be shown, the specification for power transmission lines in *Allnutt* states that power transmission lines *shall be shown.* We agree with the *Allnutt* court that under the facts of that case, "there [was] no discretionary behavior in following the established IACC rules for inclusion of power lines in sectional aeronautical charts." *Id.* at 838. The power line was required to be shown unless the chart would be over congested. In the case at bar the IACC specifications for charting obstructions less than 200 feet in height permitted the NOAA cartographers' to exercise their judgment in determining whether or not the obstruction is critical and whether or not chart congestion permits its inclusion on the Sectional Chart. (R., Vol. III, p. 115.) We hold that the decision not to depict the Buckskin Canyon cable was non-mandatory and involved the exercise of discretion.

■ Having determined that the decision to exclude the Buckskin Canyon cable from the Sectional Chart involved the exercise of discretion, we must next decide whether or not the cartographers' exercise of discretion comes within the discretionary function exception of the FTCA. The exercise of discretion by Government employees does not always fall within the discretionary function exception. *See generally, Jackson v. Kelly,* 557 F.2d 735 (10th Cir. 1977) (*en banc*). This court defined the discretionary function exception in *Jackson v. Kelly* as follows:

Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required. [Citations omitted.] The key is whether the duty is mandatory or whether the act com-

plained of involved policy making or judgment.

*Id.* at 737. In *Jackson v. Kelly,* we held that a Government doctor's duty to treat a patient was a mandatory duty and therefore the exercise of discretion in treating the patient was non-discretionary.

[I]t is clear defendant's duty in treating plaintiff was non-discretionary. He did not engage in planning or policy-making, but merely attempted to carry out the ministerial duty of caring for plaintiff in a reasonable manner as he was obliged to do as an Air Force physician. Plaintiff's complaint merely charges the defendant with the negligent practice of medicine; it does not ask the district court to review a federal health policy decision made by defendant.

We recognize that medical treatment involves judgment and discretion. This does not resolve the matter, however, because medical treatment by a government doctor does not necessarily involve governmental discretion.

*Id.* at 738.

■ In *Barton v. United States,* 609 F.2d 977, 979 (10th Cir.1979) (emphasis added), we restated the rule in *Jackson v. Kelly:*

Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act. Conversely, if there is a standard by which his action is measured, it is not within the exception. *The statute provides that if the act of the official is discretionary it is not actionable even though the discretion is abused.*

From the cases quoted above, it is clear that if a duty is not mandatory or not clearly specified then it is discretionary. The Government, however, is not necessarily immune from suit when discretion is exercised; the discretionary act must involve "governmental discretion." When "governmental discretion" is exercised,

however, the Government is immune from suit even when the employee acts unreasonably.

 We hold that in this case the United States is immune from suit under the discretionary function exception. Under the IACC, NOAA cartographers perform a function defined entirely by governmental authority and specification. In designing and publishing Sectional Charts, NOAA cartographers exercise governmental judgment when the IACC specifications are not mandatory. As the Supreme Court stated in *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953)(footnote omitted):

Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

We therefore affirm the district court's grant of summary judgment on plaintiffs' first claim for relief under the discretionary function exception.

**II.**

In their complaint, plaintiffs asserted a second claim for relief: that the United States, as owner of the lands upon which the aerial cable tramway was located, was negligent in failing to remove the cable or to warn of its existence. In its motion for summary judgment, the United States argued that it had no legal duty under Colorado law to remove the cable or to warn of its existence. The United States maintained that plaintiffs' second claim was barred as a matter of law because the only relationship between the Government and the cable was that it passed over Forest Service lands; the United States did not erect the cable and its support towers, or did it own, maintain or use the cable prior

to, at the time of, or after the helicopter crash in August, 1976. (R., Vol. I, pp. 18–19.)

In granting summary judgment, the district court accepted the United States' argument that it had no legal duty to remove or to warn of the cable. The court reasoned as follows:

The flaw in plaintiffs' argument is that it does not provide, on a manner consistent with established tort law, the basis upon which a duty to warn of an object can arise on the part of an entity who has no control over or ownership rights in the object. Such an extension of vicarious liability principles would be fundamentally at odds with the notion that tort liability may not be imposed absent a showing of actionable duty. *Guinand v. Atlantic Richfield*, 485 F.2d 414, 417 (10th Cir.1973).

(R., Vol. I, p. 121.) The paragraph quoted above was the sole basis upon which the district court found that there was no legal duty on the United States to warn the public of the cable where the United States "[had] no control over or ownership rights in the object." *Id.*

The parties agree that the United States is subject to suit on this claim for relief under 28 U.S.C. § 1346(b). Under section 1346(b) of the FTCA, the United States is subject to a civil action for money damages as any other private person "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Because the accident occurred in Colorado, the law of that state is to be applied in this case. Plaintiffs contend that under Colorado law there is an actionable duty; that is, a landowner has a legal duty to warn the public of dangerous artificial conditions on his land whether or not he owns or controls these conditions. We agree and reverse.

 We begin by noting that in Colorado an owner of land owes a general duty to others to act as a reasonable person in protecting them from foreseeable injuries caused by conditions on his property. Colo-

rado has abandoned the status classifications of invitee, licensee, and trespasser to determine the standard of care owed by a landowner to others. *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 489 P.2d 308, 314 (1971). A landowner or occupant has a legal duty, "in the management of his property, [to] act as a reasonable man in view of the probability or foreseeability of injury to others." *Id.* The Colorado Supreme Court adopted as a guide in determining the duties of possessors of land towards those who may enter their property the following principle from the *Restatement (Second) of Torts:*

> [T]he basic theme running through the Restatement is that the possessor of land is liable to a person whether *licensee* or *invitee*, or even *trespasser* for his negligence if (1) he knows of the condition, (2) knows it involves an unreasonable risk or harm to a person, and (3) fails to take reasonable precaution to correct it. Whatever qualifications or modifications there are to the several rules in the Restatement, they bear on the reasonable man standard....

*Id.*, 489 P.2d at 314 (emphasis in original). Under Colorado law then, an owner or occupant of land has a general legal duty to exercise reasonable care regarding conditions on his property. Under section 1346(b) of the FTCA, the duty to exercise reasonable care is imposed upon the United States as owner of lands in Colorado. *See, Hartzell v. United States*, 539 F.2d 65 (10th Cir.1976).

■ We next turn to the specific question of whether or not a landowner owes the duty of reasonable care under Colorado law when artificial conditions which he neither owns nor controls, are placed on his property by another. We have not found any Colorado decision which addresses this precise issue. Where no state court has addressed clearly the substantive law of the state upon which summary judgment is granted, federal courts must predict how the state's highest court would rule. *Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322 (10th Cir.1983), *cert.*

*denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984).

■ Generally, we apply the clearly erroneous standard in reviewing a district court's grant of summary judgment on a legal question upon which the state's highest court has not ruled. *See, Herndon v. Seven Bar Flying Service, Inc., supra,* and *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569 (10th Cir.1984). In this case, however, the district court neither cited Colorado authority nor engaged in any analysis in concluding that, as a matter of law, the United States owed no duty to plaintiffs. When a district court fails to set out its analysis in predicting how the state's highest court would rule on a novel question of state law, we need not defer to the district court. Under such circumstances we predict *de novo* how the state's highest court would rule.

■ In predicting how a state's highest court would rule, federal courts must follow intermediate state court decisions, policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies. *Daitom*, 741 F.2d at 1574–75. Because the issue before us presents a novel question under Colorado law, we may also look to policies, principles, and state court decisions on analogous areas of Colorado law to predict how the Colorado Supreme Court would rule. We believe that Colorado's landlord and tenant law, by analogy, indicates how the supreme court would rule on the legal issue presented in this case.

■ It has long been established in Colorado that a lessor may be liable to third persons for injuries caused by defective conditions on leased premises of which the lessor knew or should have known. *See, e.g., Colorado Mortgage & Investment Co. v. Giacomini*, 55 Colo. 540, 136 P. 1039 (1913). In *Colorado Mortgage & Investment*, the Colorado Supreme Court stated: "The responsibility of the landlord is the same in all cases. If guilty of negligence or *delictum* which leads directly to the accident and wrong complained of he is

liable; if not so guilty, no liability attaches to him." *Id.* 136 P. at 1042. The supreme court cited several cases which elaborate on the liability of lessors to third persons. Although the court qualified the weight to be given the authorities cited, *id.* 136 P. at 1045, we find the court's excerpt of *Metzger v. Schultz,* 16 Ind.App. 463, 45 N.E. 619 (1896) instructive:

It is also the general rule that the occupier of lands is prima facie responsible for any nuisance maintained thereon, and not the owner. But to this rule there are several well defined exceptions. The owner is responsible if he creates a nuisance and maintains it. He is responsible if he creates a nuisance and then demises the premises with the nuisance thereon, although he is out of possession. *He is liable if a nuisance was erected on the land by a prior owner or by a stranger, and he knowingly maintains or continues it....* Any person who conducts on his premises any dangerous business, or has thereon any dangerous machinery or substance, not in themselves unlawful, is in duty bound to exercise reasonable care and vigilance to see that no harm comes to others in consequence thereof.

*Colorado Mortgage & Investment Co.,* 136 P. at 1044.

In *Salazar v. Webb,* 44 Colo.App. 429, 618 P.2d 706 (1980), the Colorado Court of Appeals reversed the trial court's grant of summary judgment in favor of defendants-lessors who contended they were not liable to plaintiffs for injuries caused by a dangerous condition on the leased property because they did not retain control under the lease. The court held: "Under certain circumstances, a lessor may be held liable for physical harm which resulted from a dangerous condition on his land even though he retains no control over it." *Id.* 618 P.2d at 707; *see also, Ward v. United States,* 208 F.Supp. 118 (D.Colo.1962). In Colorado, the ownership or control of artifi-

cial conditions on land does not determine whether a legal duty is owed by the landowner. This is so even when the relationship between the plaintiff and the defendant is that the plaintiff was injured by a dangerous condition on property leased by defendant. It does not appear from the facts of this case that the United States even stood in the legal position of a lessor; i.e., the plaintiffs maintain that the mine and equipment are abandoned and no evidence is present in the record regarding the prior relationship between the United States and the mine owner.

It is uncontroverted that the United States did not erect the cable or maintain the mine operation. It is also uncontroverted, however, that the United States had actual knowledge of the existence of the tower, cables and other mine equipment in Buckskin Canyon. Applying the Colorado Supreme Court's test in *Mile High Fence Co. v. Radovich, supra,* we cannot hold as a matter of law that the United States owed no legal duty to the plaintiffs: (1) the United States knew of the existence of the cable; (2) the United States knew that aerial cables could pose an unreasonable risk of harm to the flying public; and (3) the United States did not take any actions regarding the cable.[1]

We do not interpret Colorado law to impose a duty on all landowners for any conditions on their land. Rather we hold that under Colorado law, a private landowner under the facts in this case has a legal duty to protect the public from aerial cables over his land. Given the general nature of a landowner's duty in Colorado, we hold simply that the district court erred as a matter of law in finding that the United States owed no legal duty to the plaintiffs and granting summary judgment on plaintiffs' second claim for relief. The district court cites no authority nor do we find any to support the court's conclusion that under Colorado law there is no "duty to warn of an object ... on the part of an

---

1. In this case, we do not decide whether the cable posed an unreasonable risk of harm or that the United States failed to take reasonable precautions to protect the public from it. These issues involve findings of fact which are to be determined by the trial court or the jury.

entity who has no control over or ownership rights in the object." (R., Vol. I, p. 121.)

AFFIRMED in part and REVERSED in part.