Sheila SEWELL, individually and on behalf of Chad Edward Sewell, and Christi Lea Sewell, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 89–B–0737.

United States District Court, D. Colorado.

March 1, 1990.

Victoria C. Swanson, Bruce A. Lampert, Patricia M. Jarzobski, Schaden, Swanson & Lampert, Denver, Colo., for plaintiffs.

Colleen L. Conlin, Trial Atty., Jayme S. Walker, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., M. Timothy Conner, Chief, Gen. Litigation Section, Gen. Counsel's Office, U.S. Dept. of Commerce, Washington, D.C., James S. Dillman, Mark Tomicich, Chief, Litigation Div., Federal Aviation Admin., Washington, D.C., for U.S.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Two motions are before me (1) defendant's motion for summary judgment on plaintiffs' first claim for relief and (2) defendant's motion to dismiss plaintiffs' second claim for relief. For the reasons to follow, I grant both motions.

This action arises out of a plane crash that killed passenger Christopher Sewell and the pilot Charles E. Lewis Jr. on August 15, 1986 near Redcliffe, Colorado. Plaintiff Sheila Sewell is the mother of plaintiffs Chad Edward Sewell and Christi Lea Sewell, and the wife of Christopher Sewell. The aircraft struck a power line not shown on the pertinent Sectional Navigation Chart (navigational chart). The navigational charts are produced by the National Oceanic Atmospheric Administration (NOAA). Plaintiffs contend that Lewis, not a party in this action, had a prior history of foolhardy flying. Plaintiffs allege that the Federal Aviation Administration (FAA) knew of Lewis' prior flight regulation violations.

Plaintiffs' first claim alleges that NOAA negligently prepared the navigational chart. Plaintiffs' second claim alleges that the Federal Aviation Administration (FAA) was negligent in failing to enforce its regulations against Lewis. Plaintiff's third claim against the Public Service Company of Colorado, Inc. has been dismissed. Defendant's motion for summary judgment is focused on the claim against the NOAA. Defendant contends that NOAA acted within its discretion in excluding the power lines from the navigational chart. The motion to dismiss is directed to the claim against the FAA. Defendant argues that claim is barred by the two-year statute of limitations of 28 U.S.C. § 2401(b) for tort claims against the United States.

I. Defendant's Motion for Summary Judgment of Plaintiffs' First Claim

■ Defendant's motion for summary judgement rests on its contention that the failure of the NOAA to depict the power transmission line on the pertinent navigational chart was a discretionary act and liability under the Federal Tort Claims Act (FTCA) is thus precluded by virtue of 28 U.S.C. § 2680(a). Although generally, the NOAA must depict vertical obstructions over 200 feet high on its navigational charts, power transmission lines are treated specifically under the applicable regulations. Because the decision to depict power lines is discretionary under the specific power line regulations and discretion is further extended in the general obstruction section, I grant defendant's motion.

### A. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Discretionary Function Exception

Under section 1346(b) of the FTCA, Congress consented to suits against the United

States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." This liability, however, is limited by section 2680(a) which states that the Government retains its immunity from section 1346(b) suits where the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved was abused." Defendant argues that NOAA employees exercised a discretionary function under section 2680(a) in excluding the power lines near Redcliffe from the navigational chart. Plaintiffs contend that the applicable regulations required that NOAA depict the power lines.

In considering the issue, I must determine (1) whether or not the decision of NOAA cartographers to exclude the power lines near Redcliffe from the navigational chart involved the exercise of discretion and if so (2) whether the discretion exercised comes within the discretionary function exception of section 2680(a). *Weiss v. United States,* 787 F.2d 518, 521 (10th Cir. 1986).

### C. *Omission of Power Lines Over 200 Feet High as "Discretionary"*

#### 1. The NOAA Specifications

In preparing navigational charts, the NOAA must follow the specifications dictated by the Inter–Agency Air Cartography Committee (IACC) in its "Sectional Aeronautical Tactical Pilotage VFR Terminal Area Charts" (IACC Specifications). The IACC consists of representatives from the Department of Commerce, Department of Transportation and Department of Defense. The parties agree that the relevant IACC charting criteria are found in the third edition of the IACC Specifications.

Chapter III, subsection 6(f) specifically pertains to charting power lines and provides in relevant part:

(3) *Telephone, Telegraph and Power Transmission Lines*

(a) Power transmission lines are shown on charts primarily for their landmark value and should be shown to a density short of over-congestion. *Transmission lines should be shown in open country and not shown in congested or built-up areas where they lose their landmark value, and would only add to chart clutter.* Lines should not be shown in short intermittent sections except where they could represent a hazardous situation, e.g., near airports, at river crossings, or dry gaps. Through open country they should be shown as continuous lines, interrupted only for reasons of cartographic practices.

\*  \*  \*  \*  \*  \*

(c) Where the symbol represents a hazard, the type "CAUTION" may be shown adjacent to the symbol to emphasize the condition.

IACC Specifications, Chapter III(6)(f) (3d ed., 1977) (emphasis added) (hereinafter power line section).

The IACC Specifications also contains a more general section pertaining to obstructions and provides in relevant part:

(6) *Obstructions*

(a) All cultural features which extend 200 feet or more above surrounding terrain shall be considered as a "vertical obstruction."

*1 The obstruction symbol shall normally be shown for obstructions such as TV or radio towers 200' or more above the terrain.* Where several obstructions occur within close proximity one to the other, or within a limited area, only the values of the highest shall be shown with the group obstruction sybmol [sic]. *Minor obstructions which are not in critical locations shall be omitted in congested areas.*

*2 Examples of features considered a hazard to low level flight are* tanks,

factories, lookout towers, smokestacks and *elevated features such as cables or pipelines crossing rivers or valleys*. These are extremely important because of the hazard to low level flight and the vertical dimension which facilitates identification at a distance.

IACC Specifications, Chapter III(9)(e) (emphasis added) (hereinafter general obstruction section).

The parties agree that this dispute is governed by the above two sections. Defendant admits that the power lines are "cultural features" and that they were over 200 feet high across a river valley. Plaintiffs do not contest that: (1) the power line serves no landmark or navigational value; (2) the line was in a congested area; (3) the poles holding the wires were small and not obstructions; and (4) the NOAA never received a determination from the FAA that the power line was a hazard.

Plaintiffs argue that the language in the general obstruction section required the NOAA to show the Redcliffe power lines on the navigational chart because the lines were above 200 feet. Essentially, defendant argues that a power line is not a "vertical obstruction," and that the specific power line section controls its actions, not the general obstruction section. Even if the general obstruction section does apply, defendant contends, it provides discretion in depicting obstructions over 200 feet tall.

### 2. Rules for Interpreting the Specifications

The IACC Specifications are ambiguous. We therefore follow the rule of construction articulated in *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). "In construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes controlling weight unless it is clearly erroneous or inconsistent with the regulation.'" (Citing *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). *See Allnutt v. United States*, 498 F.Supp. 832 (W.D.Mo. 1980). I "must rely upon the traditional presumption in favor of an agency' inter-

pretation of its own regulations," *Allnutt*, 498 F.Supp. at 840.

According to the affidavit of Frank Maloney, Chief of the Aeronautical Charting Division of the NOAA, when relevant here, power line charting was governed by the specific power line provisions of chapter III, § 6f.(3). A power line is thus charted if it has landmark value. If the NOAA discovers that a power line is over 200 feet high, it seeks a determination from the FAA as to whether the power line is a "hazard." If it is deemed a hazard, the power line is depicted and the chart marked "CAUTION." *See* IACC Specifications, Chapter III(6)(f)(3)(c). Subsequent to the accident, the NOAA discovered and reported to the FAA that some parts of the power line extended above 250 feet. The FAA determined that the power lines did not warrant charting as a hazard.

Further, according to Maloney, the NOAA does not regard power lines as vertical obstacles. Even if they did, Maloney states, a vertical obstruction over 200 feet high still need not be charted if it is not in a "critical location" and is in a "congested area." *See* IACC Specifications, Chapter III(9)(e)(6)(a)(1)

Applying this interpretation, defendant argues that the general obstacle section does not apply to power lines because they are not "vertical." Beside the obvious that power lines run horizontally rather than vertically, there are indications in the IACC Specifications that a power transmission line is not a "vertical obstruction." For example, under the IACC Specifications," "$\theta$" (inverted "v") is the symbol used to depict an obstruction. IACC Specifications, Chapter III(9)(e)(6)(h). On the other hand, the IACC Specifications dictate that a power line is depicted using a line and poles depicted using pylons. IACC Specifications, Chapter III(6)(f)(3)(a) & app. A. The NOAA interpretation is thus reasonable and plausible. *But see Weiss*, 787 F.2d at 522–23 (assuming that cables are obstructions under general obstruction section).

I need not decide that issue however, because I conclude that the NOAA's inter-

pretation that the specific power line section transcends the general obstruction section is not clearly erroneous or inconsistent with the IACC Specifications. The general obstruction provision is restricted by the modifier that an "obstruction symbol shall *normally* be shown" for obstacles over 200 feet high. It is a reasonable interpretation that "normally" means that the provision applies only in the absence of another IACC Specification. More likely, "normally" means that the section does not apply to "[m]inor obstructions which are not in critical locations ... in congested areas." Regardless, to the extent that the general obstruction provision is out of harmony with the power line section, the more specific specifications prevail. Thus, even if a power transmission line is considered a "vertical" obstacle under the IACC Specifications, depiction of power lines is governed by the separate provision.

Furthermore, as the NOAA interprets its Specifications, even if the general obstruction section did not override the more specific power line section, the general obstruction section provides that "[m]inor obstructions [over 200 feet high] which are not in critical locations shall be omitted in congested areas." Plaintiffs contend that because the IACC Specifications stress the importance of depicting on navigational charts features that constitute hazards to low flying aircraft, the Redcliffe power line is in a "critical" area and cannot be deemed "minor."

However, the Specifications are reasonably susceptible to a contrary interpretation. Because the section fails to define the term 'critical' it leaves determination of what is critical "in the realm of interpretive discretion." *Allnutt*, 498 F.Supp. at 840. By this construction, the NOAA is given discretion to determine whether an obstruction is (1) minor, (2) in a critical location or (3) in a congested area. *See Weiss*, 787 F.2d at 523. This reading is completely consistent with the language of the general obstruction section and is, by definition, not clearly erroneous or inconsistent with the IACC Specifications.

The NOAA requested from the Public Service Company of Colorado, Inc., a map showing "the location and height of any transmission line 200 feet or more above ground level." Plaintiffs are mistaken when they argue that this supports the contention that power lines over 200 feet in height must be shown on the navigational chart. The NOAA has discretion to place power lines on the navigational chart. In areas where the depiction of power lines would not clutter the navigational chart, the NOAA may well decide to indicate the presence of lines over 200 feet high. To that end, the NOAA needs to know where such power lines run. The request for the information does not amount to an admission by the NOAA that it lacks discretionary power.

### 4. Previous Interpretations

A strikingly similar question was presented in *Allnutt v. United States*, 498 F.Supp. 832 (W.D.Mo.1980). There, the pilot of a small airplane, while flying over the Osage River at an altitude of approximately 100 feet, struck power lines that spanned the river. The power lines were not depicted on the applicable IACC navigation chart and were under 200 feet high. The pilot's survivors sued under the FTCA on the basis that the power lines were negligently omitted from the navigation chart. Defendant there, as here, claimed that the omission fell within the discretionary function exception of the FTCA.

The IACC Specifications in *Allnutt* were nearly identical to those at issue here, with the prominent difference that the power line section in *Allnutt* stated that power lines *"shall* be shown on the chart to a density short of over-congestion." *Allnutt*, 498 F.Supp. at 838 (emphasis added). The IACC Specifications here state that the power lines *"should* be shown...." IACC Specifications, Chapter III(6)(f)(3)(a) (emphasis added). As held in *Weiss*, this wording difference can mean the difference between mandatory and discretionary function. *Weiss*, 787 F.2d at 522–23.

The Allnutt court, however, did not rely on the wording of the sections so much as the administrative interpretation of the sec-

tions. The testimony before that court "of the persons most familiar with the administrative construction of these IACC specifications presented a consistent view that power lines are only included 1.) if they have landmark value, and/or 2.) if they are above 200 feet in height thereby becoming an obstacle." *Allnutt*, 498 F.Supp. at 839. Under this reading of the IACC Specifications the NOAA arguably was required to depict the Redcliffe power line on the navigational chart because the power lines are over 200 feet high.

However, to the extent that *Allnutt* arguably stands for the proposition that all power lines over 200 feet high must be charted, I respectfully disagree. First, to so hold ignores the importance of the wording of the power line section. Second, it disregards the differing treatment that the sections and the NOAA give to power lines compared to vertical structures. Finally, it overlooks the discretion given in the general obstruction section. Such an interpretation here of the current IACC Specifications runs counter to the reasonable and plausible administrative application and interpretation of the sections, and to the language of the sections.

Nor does *Weiss* require the NOAA to chart all structures over 200 feet high. Although the Court does *summarize* the general obstruction section as "requiring obstructions to be depicted if they are 200 feet or more in height," *Weiss*, 787 F.2d at 522, the Court was not dealing with either an obstruction over 200 feet high or an obstruction separately provided for in the IACC Specifications.

### D. *NOAA Discretion as within the FTCA Discretionary Exception*

Having determined that omitting the Redcliffe power line from the navigational chart was an exercise of discretion, the next step is to decide if the decision falls within the discretionary function exemption of the FTCA. It does.

We hold that in this case the United States is immune from suit under the discretionary function exception. Under the IACC, NOAA cartographers perform a function defined entirely by governmental authority and specification. In designing and publishing Sectional Charts, NOAA cartographers exercise governmental judgment when the IACC specifications are not mandatory.

*Weiss*, at 524. Summary judgment is therefore appropriate under 28 U.S.C. § 2680(a).

### II. DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND CLAIM

■ Defendant argues that plaintiffs failed to notify the FAA in writing "within two years after [their] claim accrue[d]" as required by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2401(b). Because plaintiffs' claim accrued at the time of the accident, when they knew or should have known of the existence and cause of their injuries, over two years before sending administrative notice of their claim to the FAA, I grant defendant's motion to dismiss.

Dismissal under Rule 12(b)(6) is proper when it is evident from the plaintiff's complaint that the defendant is not liable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

The pleadings show that, although the accident occurred on August 15, 1986, it was not until September 12, 1988 that plaintiffs deposed Ursula Gilgulin, owner and manager of the Leadville airport, and an FAA safety counselor. According to the pleadings, Gilgulin related several flying incidents, opining that Lewis had probably violated FAA regulations and stating that she had informally reported the events to Mike Wilson of the FAA. Plaintiffs claim it was then they learned that the FAA knew of Lewis' history of careless flying.

According to defendant, on November 22, 1988 plaintiffs sent their administrative notice of claim to the FAA. Apparently

the notice was signed by plaintiff Sheila Sewell on July 7, 1988, but plaintiffs do not contest that the notice was not sent until late in November, 1988. This was over two years and three months after the accident. Defendant argues that the statute of limitations began to run at the time of the accident. Plaintiffs argue that the two-year notice requirement began to run when they deposed Gilgulin.

*United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), is dispositive. There, the Supreme Court held that a claim accrues within the meaning of § 2401(b) when a claimant knows of the existence and the cause of the injury. *See Robbins v. United States*, 624 F.2d 971, 972 (10th Cir.1980). The Court explicitly disapproved decisions that a claim accrues when a claimant has knowledge that the acts causing injury might give rise to a legal claim. *Kubrick*, 444 U.S. at 121, 100 S.Ct. at 359; *Robbins*, 624 F.2d at 972.

At the time of the accident, plaintiffs here were armed with facts about the harm done sufficient to protect themselves. A reasonably prompt and thorough investigation would have revealed Lewis' past flight antics. Indeed, plaintiffs have settled with the Lewis estate. Certainly in investigating and settling claims against his estate, plaintiffs pursued the possibility that Lewis was a careless pilot. Even a cursory attempt at discovery about Lewis' flying skill should have lead to persons such as Gilgulin who were familiar with Lewis' flying competence.

There is nothing in the pleadings showing that plaintiffs were dealing with a putative defendant who had unique and controlled access to critical information. Nor do the pleadings show any reason to believe that Gilgulin was unavailable or even difficult to contact. To excuse plaintiffs' failure to promptly inquire "by postponing the accrual of [their] claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the government." *Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. Dismissal is therefore appropriate under Federal Rule of Civil Procedure 12(b)(6).

ACCORDINGLY, IT IS ORDERED THAT defendant's motion for summary judgment on plaintiffs' first claim is GRANTED.

IT IS FURTHER ORDERED THAT defendant's motion to dismiss plaintiffs' second claim is GRANTED.

IT IS FURTHER ORDERED THAT each party shall bear their own costs.