# FOR PUBLICATION



FILED

Nov 16 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**CRAIG V. BRAJE**
Michigan City, Indiana

**ELIZABETH A. FLYNN**
Michigan City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARYBETH LEBO, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 46A05-1202-CR-104 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE LaPORTE SUPERIOR COURT
The Honorable Jennifer L. Koethe, Judge
Cause No. 46D03-1109-CM-942

**November 16, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Having convicted former LaPorte High School junior varsity volleyball coach Robert Ashcraft of multiple sex crimes against a minor student athlete, the State of Indiana charged Marybeth Lebo, the school's varsity volleyball coach, with failure to report child abuse or neglect. Lebo appeals the trial court's denial of her motion to dismiss these charges, arguing they are barred by the statute of limitations and lack sufficient specificity. We conclude that failure to report is a continuing offense to which the statute of limitations does not apply and, alternatively, that Lebo's alleged instruction that her volleyball players not discuss Ashcraft's conduct with their parents was sufficient to invoke the concealment exception to the statute of limitations. We also conclude that the charging informations, together with testimony from the probable cause hearing, allege sufficiently specific facts from which Lebo can prepare her defense. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

At all times in question, Lebo was employed as the varsity volleyball coach at LaPorte High School. In this capacity, Lebo supervised Robert Ashcraft, who was employed as the school's junior varsity volleyball coach. K.T., a minor student, began playing volleyball at LaPorte High School on or about August 1, 2007. At that time, K.T. was fifteen years of age, turning sixteen on June 21, 2008.

Ashcraft resigned from his employment with the LaPorte Community School Corporation on October 28, 2008. Around November 21, 2008, the LaPorte City Police Department began investigating allegations of a sexual relationship between Ashcraft and K.T. On December 17, 2009, Ashcraft was arrested and charged with felony sexual

2

misconduct with a minor and felony child seduction. In January of 2010, the Indiana State Police ("ISP") began investigating whether the administration and staff of the LaPorte Community School Corporation, including Lebo, were aware of the relationship between Ashcraft and K.T. and failed to report it to an appropriate authority. The investigation entailed reviewing materials from Ashcraft's criminal case and over 100,000 emails from the LaPorte Community School Corporation, as well as conducting additional interviews with student volleyball players and their parents. The ISP submitted its completed investigation report to the LaPorte County Prosecutor's Office on October 23, 2010.

In July of 2011, a jury convicted Ashcraft of multiple counts of felony sexual misconduct with a minor and felony child seduction. A probable cause hearing regarding potential charges against Lebo was held on September 6, 2011. At the hearing, ISP Detective Michael Robinson testified that the investigation into Lebo revealed that several different parents talked to Lebo about Ashcraft's inappropriate conduct with K.T., describing their relationship as being "almost like they were boyfriend and girlfriend." Appellant's App. p. 64. Detective Robinson added that "[Lebo] received several reports, all regarding … Coach Ashcraft, who was forty-two, forty-three years of age, and this player who was fifteen, sixteen years of age during the course of this time period…." Appellant's App. p. 60. "And at numerous times it wasn't just the coach and some other player or the coach and this other player, it kept coming back to the same player…." Appellant's App. p. 60. "It specifically even mentioned in [Ashcraft's] personnel file a couple of times, [K.T.'s] name." Appellant's App. p. 60.

According to Detective Robinson's testimony, the investigation also revealed that Lebo "documented in Mr. Ashcraft's personnel file [that Lebo] witnessed a couple of instances" of "inappropriate contact" between Ashcraft and K.T. Appellant's App. p. 59. Specifically, at a volleyball tournament in Crown Point, Lebo observed that "Ashcraft was leaning up against between the legs of the victim [while] watching a movie or something. In her words, [Lebo] was very uncomfortable with that [and] made the girls get up right away and start doing something else." Appellant's App. p. 59. Another instance occurred during a bus ride; Lebo noticed that "Ashcraft had put his arm around [K.T.] and was like sharing some food, yogurt, holding the cup for her, just stuff that made [Lebo] feel it was very inappropriate." Appellants' App. p. 59. Lebo further documented that "she was in fear of losing her job because of this … Ashcraft and [K.T.] situation." Appellant's App. pp. 59-60.

Detective Robinson also testified that the investigation found no indication that Lebo reported Ashcraft's conduct to any authority at LaPorte High School, the Laporte Community School Corporation, the local or state police department, or the Department of Child Services. Lebo did, however, instruct her student volleyball players "not to tell anybody what was going on. [D]on't tell your parents. Don't tell anybody." Appellant's App. p. 64. Lebo also helped prepare Ashcraft's resignation letter, which does not reference Lebo's notes in Ashcraft's personnel file regarding his inappropriate conduct with K.T. The letter states only that there was "some type of coaching problem." Appellant's App. p. 63.

On September 6, 2011, the State charged Lebo with two counts of failure to report child abuse or neglect, both Class B misdemeanors. Count I alleged a violation of Indiana

4

Code section 31-33-5-1 as follows:

> Detective Michael Robinson being duly sworn upon his oath says that: in the County of LaPorte, State of Indiana, on or between August 1, 2007 and October 28, 2008, Marybeth Lebo had reason to believe that minor child K.T. was a victim of child abuse or neglect and failed to report such child abuse or neglect to law enforcement or the department of child services and such offense was concealed by the failure to make such report for the duration of the charges and by instructing her players during the 2007 and 2008 season not to discuss team matters or rumors with anyone, and further that the State did not have evidence sufficient to file charges until an investigative report was received after October 22, 2010, and could not have discovered sufficient evidence through due diligence.

Appellant's App. p. 11. Count II alleged a violation of Indiana Code section 31-33-5-2 as follows:

> Detective Michael Robinson being duly sworn upon his oath says that: in the county of LaPorte, state of Indiana, on or between August 1, 2007 and October 28, 2008, Marybeth Lebo while employed as a teacher and a coach for LaPorte High School had reason to believe that minor child K.T. was a victim of child abuse or neglect and failed to report such child abuse or neglect to the individual in charge of the school or the individual's designated agent and such offense was concealed by the failure to make such report for the duration of the charges and by instructing her players during the 2007 and 2008 season not to discuss team matters or rumors with anyone, and further that the State did not have evidence sufficient to file charges until an investigative report was received after October 22, 2010, and could not have discovered sufficient evidence through due diligence.

Appellant's App. p. 13.

On September 29, 2011, Lebo filed a written motion to dismiss the charges against her, alleging that the charging informations were filed beyond the statute of limitations. At a hearing on this motion, Lebo orally claimed that the informations should also be dismissed because the facts stated did not constitute an offense and because the offenses were not alleged with sufficient specificity. On February 7, 2012, the trial court denied Lebo's motion

5

on all asserted grounds. This court granted Lebo's motion for interlocutory appeal on April 13, 2012.

## DISCUSSION AND DECISION

"We review a trial court's denial of a motion to dismiss for an abuse of discretion." *Delagrange v. State*, 951 N.E.2d 593, 594 (Ind. Ct. App. 2011), *trans. denied*. This means "we [will] reverse only where the decision is clearly against the logic and effect of the facts and circumstances." *Id.* "As a general rule, when a defendant files a motion to dismiss an information, the facts alleged in the information are to be taken as true." *Id.* "Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss." *Id.* at 594-95.

"[W]here a charging instrument … lack[s] appropriate factual detail, additional materials such as the probable cause affidavit supporting the charging instrument may be taken into account in assessing whether a defendant has been apprised of the charges against him." *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied* (citing *Patterson v. State*, 495 N.E.2d 714, 719 (Ind. 1986)). Here, the trial court relied on the testimony given at the probable cause hearing in denying Lebo's motion. *See* Ind. Code § 35-33-7-2 ("In lieu of the affidavit … the facts may be submitted orally under oath to the judicial officer.").

### I. Whether the Charges Are Barred by the Statute of Limitations

Lebo argues that the trial court abused its discretion in denying Lebo's motion to dismiss because the State's charges are barred by the statute of limitations. Indiana Code

6

section 35-41-4-2(a)(2) requires the State to commence prosecution of a misdemeanor offense within two years after its commission. "[This] protect[s] defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence." *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011) (citing *Kifer v. State*, 740 N.E.2d 586, 587 (Ind. Ct. App. 2000)). "[It] also "strike[s] a balance between an individual's interest in repose and the State's interest in having sufficient time to investigate and build its case." *Id.* (quoting *Heitman v. State*, 627 N.E.2d 1307, 1309 (Ind. Ct. App. 1994)). "'[A]n information alleging a time outside the statute of limitations which does not allege facts sufficient to constitute an exception to the statute is subject to a motion to dismiss.'" *Reeves v. State*, 938 N.E.2d 10, 16 (Ind. Ct. App. 2010), *trans. denied* (quoting *Greichunos v. State*, 457 N.E.2d 615, 617 (Ind. Ct. App. 1983)).

Lebo claims that, because she is charged with failing to report child abuse or neglect between August 1, 2007, and October 28, 2008, the two-year statute of limitations expired no later than October 28, 2010, well before the State filed its charging informations on September 6, 2011. The State claims that its charges were timely filed because the statute of limitations was tolled by virtue of concealment and, alternatively, because the crime of failure to report is a continuing offense.

### A. Whether the Statute of Limitations Was Tolled

"Indiana Code section 35–41–4–2(h)(2) … tolls a statute of limitations if 'the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority and could not have been discovered by

7

that authority by exercise of due diligence[.]'" *Sloan*, 947 N.E.2d at 92. "[W]hen the State relies on this exception, it must plead the circumstances of the concealment exception in the information so that the 'defendant is apprised of the facts upon which the State intends to rely and may be prepared to meet that proof at trial.'" *Reeves*, 938 N.E.2d at 17 (quoting *Willner v. State* 602 N.E.2d 507, 509 (Ind. 1992)).

In its charging informations, the State alleges that Lebo's offenses were "concealed by … [Lebo] instructing her players during the 2007 and 2008 seasons not to discuss team matters or rumors with anyone." Appellant's App. pp. 11, 13. The State further alleges that it "did not have evidence sufficient to file charges until an investigative report was received after October 22, 2010, and [it] could not have discovered sufficient evidence through due diligence." Appellant's App. pp. 11, 13. Lebo contends that these allegations are not sufficiently specific to allow Lebo to prepare a concealment defense. We, however, agree with the trial court; the allegations of concealment are sufficient to bring the charging informations into compliance with the statute of limitations.

The charging informations explicitly allege that Lebo concealed her failure to report, include facts constituting the act of concealment upon which that allegation is based, and provide a general timeframe in which the alleged concealment occurred. Further, these allegations are supported by Detective Robinson's testimony at the probable cause hearing. In addition to testifying that Lebo instructed her players not to discuss the Ascraft and K.T. situation with others, Detective Robinson testified that the ISP did not begin to suspect Lebo's failure to report until January 2010, the month after Ashcraft's arrest. Moreover,

8

Detective Robinson testified that the LaPorte County Prosecutor's Office could not have discovered sufficient evidence to charge Lebo with failure to report until it received the ISP's investigation report on October 23, 2010. The trial court did not abuse its discretion in determining that concealment tolled the statute of limitations.

Lebo also contends that the facts alleged in the charging informations do not constitute concealment and that the State failed to exercise the due diligence necessary to invoke the concealment exception to toll the statute of limitations. On this issue, we again agree with the trial court. "'Concealment is a fact-intensive issue.'" Appellant's App. p. 7 (quoting *Reeves*, 938 N.E.2d at 17). *See Willner*, 602 N.E.2d at 509. Because questions of fact are not properly raised on a motion to dismiss, *Delagrange*, 951 N.E.2d at 594-95, we cannot conclude that the trial court abused its discretion in denying Lebo's motion on this basis.

### B. Whether Failure to Report Is a Continuing Offense

As an alternative, the State argues that the crime of failure to report is a continuing offense, and therefore, the statute of limitations did not begin to run until the LaPorte County Prosecutor's Office received the ISP's investigation report on October 23, 2010. The doctrine of continuing offenses holds, "Where there is a continuing duty to do some act, the statute of limitations does not apply where some portion of the offense is within the period of limitations." *DeHart v. State*, 471 N.E.2d 312, 315 (Ind. Ct. App. 1984). In other words, "The offense continues as long as the duty persists[] and there is a failure to perform that duty." *Wright v. Superior Court*, 15 Cal. 4th 521, 525 (1997). An offense should not be

9

deemed continuing "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one." *Toussie v. United States*, 397 U.S. 112, 115 (1970).

We conclude that Indiana's failure to report child abuse or neglect statute contemplates the crime as a continuing offense. Although the statute does not utilize the terms "continuing" or "continuous," it includes the following provision to that effect: "This chapter does not relieve an individual of the obligation to report on the individual's own behalf, unless a report has already been made to the best of the individual's belief." Ind. Code § 31-33-5-3. An individual who has not been "relieved" of his duty to report must be considered to have a continuing duty to do so. To conclude otherwise effectively limits the duty to report to the day on which a "reason to believe" arises. Such a conclusion would frustrate the statute's asserted purpose to "provide protection for an abused or a neglected child from *further* abuse or neglect." Ind. Code § 31-33-1-1 (emphasis added). To permit an individual with a duty to report to avoid prosecution for failure to report because that individual's failure was not discovered within 730 days does nothing to protect a child who may still be the victim of abuse on day 731 or beyond.

Lebo contends that, because that statute requires a person with a duty to report to "*immediately* make an oral report…." Ind. Code § 31-33-5-4 (emphasis added), the offense cannot be considered continuing. But although "the violation is *complete* at the first instance the elements are met[, i]t is nevertheless not *completed* as long as the obligation remains

10

unfulfilled. 'The crime achieves no finality until such time.'" *Wright*, 15 Cal. 4th at 526 (quoting *Cores*, 356 U.S 405, 409 (1958)). Lebo's contention merely recognizes one part of this duality.

## II. Whether the Charging Informations Are Sufficiently Specific

Lebo argues that the trial court abused its discretion in denying her motion to dismiss because the charging informations failed to allege facts with sufficient specificity to apprise Lebo of the charges against her. "The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *State v. Laker*, 939 N.E.2d 1111, 1113 (Ind. Ct. App. 2010), *trans. denied* (citing *Ben–Yisrayl v. State*, 939 N.E.2d 1111, 271 (Ind. 2000)). For this reason, Indiana Code section 35-34-1-2(a)(4) requires that an indictment or information "allege the commission of an offense by … setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." Ind. Code § 35-34-1-2 (a)(4). The indictment or information also must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Ind. Code § 35-34-1-2 (d). "The court may, upon motion of the defendant, dismiss the indictment or information … [if it] does not state the offense with sufficient certainty." Ind. Code § 35-34-1-4 (a)(4).

Here, the trial court found that that "the charging information[s] together with the oral testimony presented in the … probable cause hearing has sufficient facts and circumstances to inform [Lebo] of the particular offenses for which she is charged in order to allow her to prepare a defense." Appellant's App. pp. 9-10. We agree. The charging informations track

11

the language of the statutes on which the charges are based and, in conjunction with Detective Robinson's probable cause testimony, inform Lebo of the identity of both the victim and the perpetrator, the relative time frame in which Lebo allegedly had reason to believe K.T. had been the victim of Ashcraft's abuse or neglect, and the facts and circumstances giving rise to that reason to believe.

Specifically, the facts allege that Lebo observed Ashcraft "leaning up against between the legs" of K.T. while watching a movie and having his arm around K.T. while sharing food with her during a bus ride. Appellant's App. p. 59. Although specific dates are not given, Detective Robinson testified that Lebo documented these observations in Ashcraft's personnel file, where she also noted her personal discomfort with Ashcraft's conduct. Ashcraft's personnel file is clearly identified as "evidence collected" in the ISP investigation report, Appellant's App. p. 46, and Lebo makes no argument that it will be inaccessible during discovery. Lebo is also aware that Ashcraft was convicted of sexual misconduct with a minor and child seduction. On these facts, we cannot say that the trial court abused its discretion in denying Lebo's motion to dismiss for lack of sufficient specificity.

We add that Lebo's claims in support of her sufficient specificity argument are without merit. First, Lebo's claim that her alleged observations do not give rise to a "reason to believe" presents a question of fact to be resolved at trial and is not properly raised on a motion to dismiss. *Delagrange*, 951 N.E.2d at 594-95. Second, Lebo's claim that the time frame alleged fails to identify whether K.T. was fifteen or sixteen at the time of Lebo's observations is misplaced. The failure to report statute does not require that an individual

12

have actual knowledge of child abuse or neglect. Rather, a duty to report is imposed on an individual who merely has "reason to believe" a child is the victim of such a crime. Ind. Code §§ 31-33-5-1, 31-33-5-2 (2011). *See* Ind. Code § 31-33-1-1(1) (stating one of the purposes of a duty to report is "to encourage effective reporting of *suspected* or known incidents of child abuse or neglect" (emphasis added)). Therefore, the conduct allegedly observed by Lebo need not satisfy the elements of sexual misconduct with a minor, Ind. Code § 35-42-4-9 (requiring a victim less than sixteen years of age), or those of child seduction, Ind. Code § 35-42-4-7 (requiring a victim at least sixteen years of age).

The judgment of the trial court is affirmed.

ROBB, C.J., concurs.

BAKER, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

MARYBETH LEBO, )
)
    Appellant-Defendant, )
)
        vs. ) No. 46A05-1202-CR-104
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

**BAKER, Judge, concurring in part and dissenting in part.**

I agree with the majority's determination that the statute of limitations had not run with respect to the State's ability to bring charges against Lebo. More particularly, I believe that Lebo's concealment, properly alleged in the charging informations, tolled the statute of limitations as it applied to her such that the charges filed against her in September 2011 were not time-barred. I part ways only briefly on this issue to note my belief that the tolling ceased when the State had probable cause to arrest Ashcraft, because at this time the State could have discovered through due diligence whether Lebo, in her role as K.T.'s coach and as Ashcraft's superior, had failed to make a report required under Indiana Code sections 31-33-5-1 or 31-33-5-2. Under either interpretation of when the tolling stopped, however, the charges against Lebo were brought within the two-year statute of limitations.

Because by all accounts the statute of limitations had not run, I believe that it is

14

unnecessary for this Court to reach whether our legislature contemplated or created the offense of failure to report child abuse or neglect as a continuing offense. Nevertheless, because the majority reaches this issue, I must note that I cannot agree with the majority's characterization of the failure to report child abuse or neglect as a continuing offense that never invokes the statute of limitations.

More than thirty years ago, our Supreme Court commented on the fundamental fairness of having and enforcing statutes of limitations by saying:

> Formerly, statutes of limitations were looked upon with disfavor in that they are invariably in derogation of the common law. Now, however, the judicial attitude is in favor of statutes of limitations, rather than otherwise, since they are considered as statutes of repose and as affording security against stale claims. Consequently, except in the case of statutes of limitations against the government, the courts are inclined to construe limitation laws liberally, so as to effect the intention of the legislature.

Shideler v. Dwyer, 275 Ind. 270, 273, 417 N.E.2d 281, 284 (1981) (internal quotation marks and citation omitted). As aptly highlighted by the majority, our Supreme Court recently reiterated this rationale by stating that the purpose of a statute of limitations in a criminal case is to "protect defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence." Sloan v. State, 947 N.E.2d 917, 920 (Ind. 2011) (citing Kifer v. State, 740 N.E.2d 586, 587 (Ind. Ct. App. 2000)). In my view, these concerns remain ever-present where the alleged crime consists of a failure to act, as is the case here, as opposed to a crime with an overt actus reus. Indeed, in such cases there may be even more of a risk of fading memories and stale evidence.

Furthermore, unlike the majority, I do not believe that our legislature has indicated a

15

clear intent to make failure to report child abuse or neglect a continuing offense. The State charged Lebo under Indiana Code section 31-33-22-1, which provides, "[a] person who knowingly fails to make a report required by IC 31-33-5-1 commits a Class B misdemeanor," and "[a] person who knowingly fails to make a report required by IC 31-33-5-2 commits a Class B misdemeanor." Ind. Code § 31-33-22-1 (emphases added). Based on this language, I believe that it is clear that the legislature intended for only one crime to result under each of the failure to report statutes.[1] See State v. Langdon, 159 Ind. 377, 377, 65 N.E. 1, 2 (1905) (holding that the former crime of deserting one's wife was "but one offense," and explicitly rejecting the idea that there was a new crime of desertion each day the husband remained absent).

Moreover, I do not believe that Indiana Code section 31-33-5-3 clearly expresses the legislature's intent to make failure to report child abuse or neglect a continuing offense by its provision that an individual is not "relieved" of the duty to make a report unless that individual believes a report has already been made. Indeed, the meaning of Indiana Code section 31-33-5-3 becomes apparent when it is analyzed in the context of its surrounding statutes. Indiana Code section 31-33-5-1, the statute that imposes the general duty to report child abuse, provides that "an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article." Such a report must be made "immediately." I.C. § 31-33-5-4. Indiana Code section 31-33-5-2 imposes an

_____

[1] Although one crime can be committed under each of these statutes, Indiana Code section 31-33-22-1 makes clear that a penalty for failing to comply with Indiana Code section 31-33-5-2 can be in addition to the penalty imposed for a violation of Indiana Code section 31-33-5-1.

16

additional duty on individuals acquiring that "reason to believe" in certain professional capacities to also "immediately" notify the person in charge of the individual's employing institution, who should then report the alleged abuse or neglect. In this context, it is clear that Indiana Code section 31-33-5-3 operates, not to impose a continuing duty to report, but to be clear that once the initial individual with the "reason to believe" notifies the person in charge of the employing institution, that initial individual must still make a separate report to the designated authorities if the person in charge would for any reason fail to make the institution's report as required by Indiana Code section 31-33-5-2.

Finally, in my view, any intent of the legislature to make the failure to report child abuse or neglect a continuing offense is at best ambiguous, and it "[i]t is well-established that penal statutes must be strictly construed against the state." Sunday v. State, 720 N.E.2d 716, 719 (Ind. 1999). When this principle is added to the fact that statutes of limitations are favored in Indiana and the doctrine of continuing offense is meant to be an extremely limited doctrine, I do not believe this Court can reasonably interpret the failure to report child abuse or neglect as a continuing offense.

I am sensitive to the fact that if someone fails to make a report, child abuse or neglect could continue for every day that the report goes unmade. See slip op. at 10. However, we must also be reminded that the person who has "reason to believe" that child abuse or neglect has occurred and fails to report that abuse or neglect is not the person inflicting harm on the child. Yet the statute of limitations does not fail to apply to those who commit heinous

17

crimes against children.

Notwithstanding my view that the statute of limitations was tolled by Lebo's acts of concealment, I believe that the trial court erred in denying Lebo's motion to dismiss. Neither the State's charging information nor the evidence presented at the probable cause hearing alleged facts that, even if taken as true, would suggest that Lebo had "reason to believe" that K.T. was the victim of child abuse. "Reason to believe," for the purposes of the failure to report statute, has been defined by our legislature as "evidence that, if presented to individuals of similar background and training, would cause the individuals to believe that a child was abused or neglected." Ind. Code § 31-9-2-101. There is no corresponding statutory definition for "believe," but this term is defined by Black's Law Dictionary as "[t]o feel certain about the truth of; to accept as true." Black's Law Dictionary (9th ed. 2009).

Here, the facts demonstrated by the State to have been known by Lebo—that Ashcraft had leaned on K.T.'s legs during a movie, that Ashcraft had his arm around K.T. and shared yogurt with her during a bus trip, or that some parents had complained to Lebo that Ashcraft and K.T. appeared "almost like they were boyfriend and girlfriend"—would not, in my view, cause an individual of similar background and training as Lebo to "believe" that Ashcraft was engaging in illegal sexual activity with K.T. Appellant's App. p. 59, 64. Although these acts may be viewed in hindsight as suggestive of Ashcraft's caddish behavior, at the time Lebo knew these facts, there is no way that a person in a similar position as Lebo would "feel certain" that Ashcraft was engaging in illegal sexual acts with K.T.

While Lebo need not have observed conduct of Ashcraft and K.T. satisfying the

18

elements of a particular sex crime statute before she can be said to have a duty to report child abuse or neglect, <u>see</u> slip op. at 12-13, neither does the duty to report attach merely because Lebo felt uncomfortable about some of Ashcraft's actions. Importantly, the record is void of anyone actually telling Lebo that Ashcraft and K.T. were having a sexual relationship. Based on the knowledge that Lebo actually had, her actions of documenting her discomfort with Ashcraft's behavior in his personnel file, intervening to stop inappropriate behavior she witnessed, and seeking Ashcraft's resignation were reasonable. Although we may hope that individuals make a report any time child abuse or neglect is suspected, the duty to report has not been imposed by our legislature until one has "reason to believe" that abuse or neglect has occurred. My view is that there was no evidence that such "reason to believe" existed here, and therefore, the trial court should have granted Lebo's motion to dismiss.

Accordingly, I dissent.